**Gavin Rayshaurd DUFFEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–08–00260–CR.**

Court of Appeals of Texas,
Dallas.

Aug. 25, 2009.

Russell Wilson, Burleson, Pate and Gibson, LLP., Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Lisa Smith, Asst. Dist. Atty., for State.

Before Justices FITZGERALD, LANG, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

A jury convicted Gavin Rayshaurd Duffey of aggravated sexual assault of a child under the age of fourteen and assessed his punishment at forty-five years' imprisonment. In a single appellate issue, Duffey contends the trial court erroneously failed to effectuate the State's election of a single offense. We affirm the trial court's judgment.

### BACKGROUND

Duffey and A.B. were part of a close-knit group of family members and friends. Duffey's sister and A.B.'s mother were best friends. All three families (Duffey's, his sister's, and A.B.'s mother's) had children, who played together often at the families' homes.

The indictment in this case charged that, on or about July 23, 2000, Duffey did:

intentionally and knowingly cause the contact and penetration of the female sexual organ of [A.B.], a child, who was not then the spouse of defendant, by an object, to-wit: the sexual organ of said defendant, and, at the time of the offense, the child was younger than 14 years of age.

Aside from this single incident, the State notified Duffey it intended to introduce

evidence of extraneous offenses amounting to a continuing course of sexually abusive conduct toward A.B. from the time she was seven years old until she was ten or eleven. Duffey filed a pretrial Motion to Require State to Elect Date of Offense. The trial court stated the motion would be addressed when the State rested its case in chief, at which time the State would be expected to make its election; Duffey agreed.

At trial, in response to the prosecutor's questions, A.B. described the first time she remembered that Duffey "had done something to [her.]" A.B. remembered the incident occurring around her seventh birthday, which was July 23, 2000. She was at the home of Duffey's sister, celebrating the birthday of another child in the extended group of family and friends. Some of the children stayed when the party was over and spent the night together. In the morning, the children were together upstairs eating breakfast and watching television. Duffey came into the children's room and sent them all downstairs. Then he called A.B. back upstairs, ostensibly to turn off the television. But when she went back into the children's room, the television was already off, and Duffey was standing there. He told her to lie down on the floor and to pull her underwear down. He pulled his penis out from his boxer shorts and put it inside her "private part." A.B. described Duffey's movement while inside her and then his ejaculation after withdrawing. A.B. was "scared" afterward, and she ran to the bathroom and cried. Duffey told her not to tell anyone, and she did not until much later.

When she had finished answering questions detailing the first incident, A.B. testified, in a brief exchange with the prosecutor, that similar incidents had occurred:

Q. Did this ever happen again?

A. Yes.

Q. Okay. How many times, [A.B.], would you say that his penis went into your private part, your vagina?

A. About four times.

Q. About four times?

A. Yes.

A.B. then went on to describe various oral assaults by Duffey.

After the State rested, the trial court removed the jury from the courtroom, conducted an "[o]ff-the-record discussion," and then stated, "Let's get on the record which offense you [the State] are proceeding on." The State announced it would proceed on the July 23, 2000 incident in which the defendant penetrated A.B.'s sexual organ with his own sexual organ. The prosecutor elaborated, describing the elected offense as:

The first time, the child says, when she was seven, the first incident that she can remember, when she was seven years old. That being the cousins were downstairs. She was asked to come upstairs, to turn off the television where the Defendant was at, where he then shut the door and forced his penis into her vagina.

The judge asked "[a]re we clear on which offense we're talking about?" Counsel for Duffey replied, "Yes, Your Honor."

Following another recess, the testimony resumed with Duffey presenting evidence. Duffey presented evidence of alibi, and he denied engaging in the conduct alleged in the indictment.

Ultimately, the jury convicted Duffey and assessed his punishment at forty-five years' imprisonment. Duffey brings a single issue on appeal, contending the trial court erroneously failed to effectuate the State's election of a single offense.

## THE REQUIREMENT OF AN ELECTION

■ The general rule is that when an indictment alleges just one sexual assault, but more than one assault is shown by the evidence at trial, the State must elect the act on which it will rely for conviction. *See O'Neal v. State,* 746 S.W.2d 769, 772 (Tex.Crim.App.1988). In this context, an election is "some action that excludes or limits the jury's consideration of an offense." *Ex parte Goodbread,* 967 S.W.2d 859, 861 n. 2 (Tex.Crim.App.1998). The trial court has discretion to require the State to make its election at any time before the State rests its case in chief. *O'Neal,* 746 S.W.2d at 772. Once the State has rested its case in chief, however, on timely request by the defendant, the trial court must order the State to make its election. *Phillips v. State,* 193 S.W.3d 904, 912 (Tex.Crim.App.2006) (applying *O'Neal,* 746 S.W.2d at 772). Following the State's election of the act on which it will proceed for conviction, the defendant is entitled to an instruction charging the jury to consider only the elected act in deciding guilt and limiting the jury's consideration of all other unelected acts to the purposes for which they were admitted. *Rivera v. State,* 233 S.W.3d 403, 406 (Tex.App.-Waco 2007, pet. ref'd) (citing *Bates v. State,* 165 Tex.Crim. 140, 142, 305 S.W.2d 366, 368 (1957)); *see also Goodbread,* 967 S.W.2d at 861 n. 2 (election excludes or limits jury's consideration of offense by instructing to disregard or limiting purpose for which evidence is offered).

In this case, Duffey acknowledges the trial court ordered an election and the State made one. He complains the trial court failed to effectuate the State's election in the court's charge by limiting the jury's consideration to the elected offense in deciding his guilt. Duffey argues that because the jury was not informed of the consequences of the election, in effect no election was made. We agree.

The essence of an election includes both the State's express selection of the primary offense upon which it will proceed and the trial court's communication of that selection through the submission of an appropriate written court instruction to the jury. The trial court is charged with discerning the legal effect of the State's election and explaining that effect to the jury through the medium of the court's charge. Only when the trial court gives the jury appropriate written instructions is the election formally accomplished within its proper legal context.

In Duffey's case, the court gave an instruction limiting the jury's consideration of extraneous offenses to their proper purpose. However, the court did not instruct the jury specifically to limit its consideration of guilt or innocence to the offense elected by the State. Accordingly, the jury was not properly instructed which offense was to be considered under the guilt-innocence inquiry and which offenses were merely extraneous. We conclude the trial court's failure to give a limiting instruction concerning the State's election constitutes error.

## THE QUESTION OF HARM

Absent harm to Duffey, the trial court's error is not reversible. *See O'Neal,* 746 S.W.2d at 772; *see also* TEX.R.APP. P. 44.2.

### *Standard of Review for Harm*

The parties propose different standards for conducting the harm analysis in this case. Duffey relies on *Phillips,* which held the trial court's failure to require the State to elect upon timely request resulted in constitutional error. 193 S.W.3d at 914. Duffey argues the court's failure to instruct the jury of the State's election placed him in the same position as if no

election had been ordered or made. He contends the error is constitutional in nature and this Court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to his conviction. *See id.; see also* TEX.R.APP. P. 44.2(a).

The State argues the error is mere charge error, and—because Duffey failed to object to the court's charge—the error should be reviewed for egregious harm. *Almanza v. State*, 686 S.W.2d 157, 176 (Tex.Crim.App.1985). The State distinguishes *Phillips* because an election was both ordered and made in Duffey's case. The State relies instead on *Isenhower v. State*, 261 S.W.3d 168 (Tex.App.-Houston [14th Dist.] 2008, no pet.). In that case the trial court granted the defendant's request for an election, and the State timely made its election, but the trial court failed to instruct the jury on the election. *Id.* at 173. Although finding error in that failure to instruct, *Isenhower* stressed that an election was made in the trial court. *Id.* at 175. *Isenhower* concluded that authorities relied upon by the appellant were inapposite, because in those cases the defendant's request for an election by the State was denied, whereas in *Isenhower* the request was granted. *See id.* at 175 (distinguishing *Dixon v. State*, 201 S.W.3d 731 (Tex. Crim.App.2006); *Phillips*, 193 S.W.3d 904; *Fleck v. State*, 201 S.W.3d 268 (Tex.App.-Houston [14th Dist.] 2006, no pet.)). *Isenhower*, thus, rejected the *Phillips* constitutional harm standard as inapplicable. *Id.*

Because we have concluded the trial court's failure to instruct the jury concerning the State's election placed Duffey in the same position as if no election had been made, we believe the *Phillips* constitutional harm standard is applicable in this case. *Phillips* sets forth four fundamental principles or purposes that are served by an election and its accompanying procedures:

> [1] to protect the accused from the introduction of extraneous evidence; [2] to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty; [3] to ensure unanimous verdicts; that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred; and [4] to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.

*Phillips*, 193 S.W.3d at 910 (footnotes and citations omitted). Whether expressly or implicitly, these principles inform a court's analysis of many issues related to an election. On the harm-standard issue, *Phillips* concluded the third and fourth of these principles—unanimity and notice— implicate fundamental constitutional principles and thus require the stringent constitutional standard of review. *Id.* at 913– 14. Although only two of the four principles were deemed constitutional in import, *Phillips* concluded broadly that "the failure to require the State to elect upon timely request results in constitutional error." *Id.* at 914.

In *Isenhower* and in Duffey's case, the State's timely elections obviated concerns about notice to the defendant. But we have no reason to believe the court of criminal appeals would view the standard of review differently here merely because the defendant was notified of the election. The *Phillips* directive to apply a constitutional standard of review for harm in election cases was not expressly or implicitly limited to cases that address both unanimity and notice. *See Dixon*, 201 S.W.3d at

734–36 (applying constitutional standard in harm analysis under all four principles). Instead, the *Phillips* holding is a broad one; we are not free to reject its dictates. We therefore decline to follow *Isenhower*. We will reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Duffey's conviction. *See id.; see also* TEX. R.APP. P. 44.2(a).

### Presence of Jury For Election

■ Initially, the State raises a procedural matter concerning the issue of harm: it contends the trial court's error is harmless because the jury may have been present at the time the State made its election. The record states clearly that the jury was excused after the State rested. An "off-the-record discussion" took place, following which the State made its election on the record. The record then indicates "there was a short break in the proceedings," followed immediately by the defense calling its first witness. The jury must have returned to the courtroom before testimony resumed, but it is unclear whether that happened during the off-the-record discussion, during the short break in the proceedings, or at some other time.

The presence or absence of the jury for the election, however, is not dispositive. Even if the jury had been present, the State's announcement of its election was not the equivalent of a written court instruction telling the jury to limit its consideration to the elected act when determining guilt or innocence. We do not require the jury to discern the legal effect of the State's election. As we discussed above, such discernment is the proper function of the trial court. We conclude the presence or absence of the jury during the State's election in this case did not affect the trial court's failure to instruct the jury properly on the legal effect of that election.

### Harm Under the Phillips *Principles*

■ Duffey asserts none of the four *Phillips* principles were served in this case. We address the four *Phillips* principles in turn.

### Admission and Use of Extraneous Evidence

Duffey's primary argument is that—given the trial court's failure to instruct the jury on the elected offense—the State was able to use the cumulative effect of testimony concerning extraneous offenses to obtain the conviction. Duffey stresses the "graphic and explicit" nature of the offenses A.B. described, especially the oral assaults which were clearly extraneous offenses. He complains the State's closing argument encouraged the jury to convict based on the pattern of offenses rather than on the single elected offense. We understand this argument to implicate both the first and second *Phillips* principles, i.e., admission of extraneous evidence and using evidence of multiple offenses to obtain a conviction without sufficient proof of the single charged offense.

Duffey's arguments concerning the admission of the extraneous offenses must fail. Initially, Duffey did not object to the evidence of these offenses. TEX.R.APP. P. 33.1(a)(1) (prerequisite to appellate review is timely objection in trial court). Moreover, evidence of other acts committed by Duffey against A.B. was admissible to show the state of mind of both the defendant and the complainant and to show their previous and subsequent relationship. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2008); *see also Dixon*, 201 S.W.3d at 731 ("appellant was not entitled to be protected from the admission of evidence of extraneous sexual offenses committed by him against the child"). And as to the use of the evidence of extra-

neous offenses, the trial court's instruction properly limited the jury's consideration of the extraneous offenses to their statutory purposes. The limiting instruction was certainly effective as to the oral assaults that Duffey finds so egregious because the indictment and charge both referred only to an act of vaginal penetration.

### Conviction Without Proof Beyond Reasonable Doubt

The second purpose underlying election is to minimize the risk of a jury choosing to convict because of evidence of multiple crimes, even though the offense at issue was not proved beyond a reasonable doubt. *Phillips,* 193 S.W.3d at 910. We conclude this record reflects no such risk. The State presented ample evidence that Duffey intentionally caused the contact and penetration of A.B.'s sexual organ with his own when A.B. was younger than fourteen years old. A.B.'s testimony of those facts was straightforward, and her testimony is sufficient to uphold Duffey's conviction. *See* TEX.CODE CRIM. PROC. art. 38.07 (Vernon 2005); *Tear v. State,* 74 S.W.3d 555, 560 (Tex.App.-Dallas 2002, pet. ref'd). Moreover, the evidence of all of the sexual assaults came from A.B., either directly or through her outcry witness; the child was either credible or she was not. *See Dixon,* 201 S.W.3d at 735. The record does not support Duffey's argument that evidence of multiple offenses could have led to a verdict that was based on less than proof of guilt beyond a reasonable doubt.

### Requirement of Unanimous Verdict

Next we ask whether, absent a proper instruction, we can be sure the jury verdict was unanimously directed at the single offense elected. We perceive no risk that the jury could have reached a non-unanimous verdict in this case. The jury charge mirrored the indictment. Both referred to the single act of vaginal penetration that occurred on or about the 23rd of July 2000. Although the jury was instructed that the State did not need to prove the exact date of the offense, the date given coincided with A.B.'s seventh birthday, and she testified the first incident occurred around that birthday. A.B. did not relate a date associated with any other incident of sexual contact. In fact, A.B. did not relate a detailed account of any other specific incident.[1] Her testimony describing the elected incident extends through ten pages of the trial transcript. The record shows A.B.'s testimony that vaginal penetration occurred about three or four more times was both brief and general in nature. The issue for the jury's determination was limited to vaginal penetration, so none of A.B.'s descriptions of oral assaults could have been considered by the jury in answering the question. Duffey's defense was limited to an alibi for the elected offense. Both closing arguments focused almost exclusively on the elected offense. Indeed, in his closing argument, Duffey's counsel stated:

> But, you know, [Duffey's] testimony doesn't stand alone. His testimony is corroborated by other people, *because the whole crux of this allegation is this birthday party and what A.B. says happened the next morning.* Okay. And [Duffey]—not only [Duffey], but his sister—and by the way the party was at her house—and his wife also corroborated the fact that he didn't even have a

---

1. Pearle Robinson testified as the outcry witness at trial. She stated that in September 2005, A.B. told her of an incident involving vaginal penetration by Duffey. A.B. told Robinson that incident had occurred "about three months" before the outcry. No other reference was made to this incident in the evidence or in arguments, and Duffey does not refer to it or rely upon it on appeal.

car. You know, he got a ride home, and then he never came back the next morning. *That's when she said it happened is the next morning. She's upstairs, and all of this stuff happens, and all these children are downstairs.* (Emphasis added.)

There is no question the jury was properly focused on this single detailed allegation of vaginal penetration.

### Notice to Defendant

Because of the constitutional significance of the issue of notice to the defendant, we note that due process concerns are not implicated by the error made by this trial court. Duffey acknowledged in open court he was not entitled to receive notice of the election until the State rested its case in chief. He received timely notice of the State's election after the State rested. His counsel expressly acknowledged understanding the election when it was made and did not indicate his anticipated defense was prejudiced or adversely affected in any way. Moreover, Duffey's defense was directed specifically toward the elected offense: Duffey and each of his witnesses testified they remembered the birthday party at his sister's house, but Duffey did not stay the night there and did not return the next morning.

### CONCLUSION

The trial court erred by failing to instruct the jury concerning the elected offense in this case. However, the record establishes beyond a reasonable doubt that the trial court's error in this case did not contribute to Duffey's conviction. We overrule Duffey's single issue, and we affirm the trial court's judgment.