

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-09-00239-CR

MOHAMMED REZA                                             APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Mohammed Reza appeals his conviction for aggravated sexual assault of a child. In two issues, Reza argues that the trial court erred by not requiring the State, upon Reza's request, to elect which of multiple acts it was relying on for conviction and by not charging the jury with language giving effect to the State's insufficient election. We will affirm.

----

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Farzana and her husband Shaikh, moved from Bangladesh to the United States; initially, they stayed in Texas with Shaikh's sister Daisy and Daisy's husband Reza. In June 1995, Farzana and Shaikh had a daughter, A.H., and in 1999, they moved to Canada. A.H. and her parents kept in close contact with Daisy and Reza, who remained in Texas. A.H. often went on family vacations with Daisy and Reza, she visited them every summer, and she even asked her parents if she could refer to Reza, her uncle, as her dad. When A.H. was eight years old, Reza began sexually assaulting her; he would touch her "private parts" when they were at his house alone. A.H. did not tell anyone because Reza told her not to.

In January 2006, when A.H. was ten, Farzana, A.H., and A.H.'s younger sister moved to Texas so that Farzana could join Reza's business of owning and operating convenience stores. Shaikh travelled back and forth between Canada and his family in Texas. Farzana and her daughters lived with Reza and Daisy in Decatur for the first couple of months of 2006, and Reza continued touching A.H. inappropriately during that time.

While living with Reza and Daisy, Farzana noticed changes in A.H.; A.H. told her mother that she did not want to live there and asked to sleep in her mother's bedroom instead of the guestroom. After they moved out of the house, A.H. did not want to go back to visit, and when she did, she did not want to go inside. In 2006, Reza bought A.H. two sets of silky pajamas; both Daisy and

2

Farzana thought this was unusual because he had never bought clothes for his family. When they asked Reza why he had bought the pajamas, he explained that she comes over wearing jeans and that she needs to be comfortable; he insisted that the pajamas be left at his house.

On Thanksgiving 2006, when A.H. was eleven, Reza and Daisy had a party at their house. Farzana was not feeling well and decided to leave the party early. Despite A.H.'s request to go home with her mother, Farzana made A.H. stay at her aunt and uncle's house because Farzana did not want to hurt Daisy's feelings. A.H. slept in Daisy's bed, and Reza touched her again that night. That weekend, A.H. told her mother that Reza had been touching her "private parts" for months. About one week later, Farzana told Daisy what A.H. had told her, but Farzana never called the police. When Daisy confronted Reza, he apologized and asked her to help A.H. "recover." Shortly thereafter, Reza visited Farzana; he told her that he was sorry for what he had done and that it was "a sick thing to do," and he asked for her forgiveness. Farzana and her family moved back to Canada one week later, and Daisy filed for divorce. Daisy ultimately reported Reza to the authorities.

Judy Waldman, a sexual assault nurse examiner, examined A.H on January 24, 2007. A.H. told Waldman that she had woken up one night to find Reza in her room touching her vaginal area inside her underwear. When Waldman asked A.H. if Reza had touched her with his penis, A.H. said she was not sure. Waldman did not find any injuries or trauma to A.H.'s female sexual

3

organ, nor did she expect to find any considering the nature of the contact described by A.H. and the length of time that had passed since the incident.

Reza was charged by indictment with two counts of aggravated sexual assault of a child. The first count alleged that on or about January 6, 2006, Reza penetrated A.H.'s sexual organ with his finger, and the second count alleged that on or about November 23, 2006, Reza caused A.H.'s sexual organ to contact his sexual organ. The jury convicted Reza of the first count, acquitted him of the second count, and assessed his punishment at fifteen years' confinement and a $10,000 fine. The trial court sentenced him accordingly.

### III. ELECTION

In his first issue, Reza argues that the trial court erred by not requiring the State to elect, upon defense counsel's request, which act the State would rely on for conviction of each count of sexual assault.

### A. Law on Election

Generally, when "one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction." *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988); *see Phillips v. State*, 193 S.W.3d 904, 909–10 (Tex. Crim. App. 2006). In this context, an election is "some action that excludes or limits the jury's consideration of an offense." *Ex parte Goodbread*, 967 S.W.2d 859, 861 n.2 (Tex. Crim. App. 1998). Before the State rests its case in chief, the trial court has discretion in directing the State to make

4

an election. *O'Neal*, 746 S.W.2d at 771. Once the State rests, upon a timely request by the defendant, the trial court must order the State to make an election, and failure to do so is error. *Phillips*, 193 S.W.3d at 909.

The election requirement forces the State to formally differentiate the specific evidence upon which it will rely as proof of the charged offense from evidence of other offenses or misconduct it offers only in an evidentiary capacity. *Id.* at 910. This allows the trial judge to distinguish the evidence that the State is relying on to prove the particular act charged in the indictment from the evidence that the State has introduced for other relevant purposes, and the trial court can instruct the jury on the proper use for each type of evidence. *Id.* (citing Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2010)). Moreover, the election requirement protects fundamental rights such as notice and unanimity, insuring that the defendant is aware of precisely which act he must defend himself against and that the jurors know which act they must all agree he is guilty of in order to convict him. *Id.*

## B. State's Election was Sufficient

Here, Reza was charged with two offenses, sexual assault by digital penetration alleged to have occurred on or about January 6, 2006, and sexual assault by causing A.H.'s sexual organ to contact his sexual organ alleged to have occurred on or about November 23, 2006. Evidence at trial revealed a continuing course of sexual contact between Reza and A.H., beginning when

A.H. was eight years old and continuing until sometime around Thanksgiving 2006, when A.H. was eleven.

A.H., who was fourteen years old at the time of Reza's trial, testified that Reza began touching her inappropriately when she was eight years old and that it usually happened at Reza's house at night when they were at home alone. A.H. testified that in early 2006—when she was ten years old—her family moved from Canada into Daisy and Reza's house in Decatur. According to A.H., Reza would go into the room where she slept while everyone else was sleeping and would touch her, both over and under her clothes. He would also go into Daisy's bedroom when A.H. was in there watching TV alone and touch her inappropriately. A.H. explained that Reza would put his hands down her pants, that he would touch her "wiggly part" (which A.H. testified was her clitoris), and that it would hurt. She recalled that Reza had put cream on his finger several times. A.H. testified that Reza had taken off his pants and her pants, had lain beside her on the bed, and had pressed his penis to her "private part." She said that she had felt "[w]etness" on the bed and on her body. A.H. testified that Reza had bought her loose-fitting pajamas because he did not like that her jeans were too tight to take off. After she and her family moved out of Reza and Daisy's house, A.H. would stay over there, sometimes sleeping in the same bed with Daisy and Reza, and Reza would touch A.H. while his wife was sleeping in the same bed. According to A.H., the last time Reza ever did anything to her was after the party on Thanksgiving 2006. A.H. slept over in Daisy's bed that night,

6

and Reza touched her with his hand while she was sleeping. Afterwards, A.H. told her mom what had happened.

At the close of all the evidence, defense counsel requested that the trial court order the State to elect which conduct they were proceeding on for conviction of both offenses alleged in the indictment.[2] The trial court requested a response from the State, and the following exchange occurred,

> [The State]: Your Honor, we can elect, based on [A.H.]'s testimony, the first time the Defendant put cream on his finger, put his finger down her pants, penetrated her sexual organ. We can allege –
>
> We can elect the first time that he ever laid her on her side, spooned up behind her and put his penis between her legs, making contact with her sexual organ. So we'll elect the first time that he did either of those.
>
> THE COURT: Okay.
>
> [Defense Counsel]: There's no – There's no allegation. There's no context that that's done before the presentment of the date of the indictment, which is August 29, 2007.
>
> And I would submit that's insufficient, but I understand what they said.

---

[2]Reza argues that he preserved his request for an election at the close of the State's case-in-chief, but our review of the record shows that Reza moved only for a directed verdict at that time. The trial court deferred hearing his motion until the next break, and after the defense rested, the trial court took a break and heard Reza's motion for directed verdict. It was not until that point that Reza requested the trial court to order the State to elect. Consequently, Reza was not entitled to an election at the close of the State's case. *See Phillips*, 193 S.W.3d at 912. He was, however, still entitled to a unanimous verdict, and he preserved that right by requesting an order requiring the State to elect at the close of all the evidence. *See id.*

THE COURT:  All right.

We hold that the State's response was adequate to elect the acts upon which it would rely for conviction.  That is, the State's response sufficiently informed the trial court and defense counsel that it was electing to rely on the first time Reza put cream on his finger, put his finger down A.H.'s pants, and penetrated her sexual organ for conviction of the offense alleged in count one of the indictment—sexual assault by digital penetration.  And the State's response also sufficiently informed the trial court and defense counsel that it was electing to rely on the first time Reza "ever laid [A.H.] on her side, spooned up behind her and put his penis between her legs, making contact with her sexual organ" for conviction of the offense alleged in count two of the indictment—sexual assault by causing A.H.'s female sexual organ to contact his sexual organ.  *See id.* at 909–10; *O'Neal*, 746 S.W.2d at 771; *Smith v. State*, Nos. 02-08-00394-CR, 02-08-00395-CR, 2010 WL 3377797, at *10 (Tex. App.—Fort Worth Aug. 27, 2010, no pet.) (not designated for publication) (holding State's "general" elections were adequate "because the complainants' testimony regarding the offenses was general"); *see also Isenhower v. State*, 261 S.W.3d 168, 173–75 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (analyzing jury charge error based on State's proper election "to seek conviction based upon the first act of sexual intercourse that occurred when A.B. was fourteen years old").  Consequently, we overrule Reza's first issue.

**IV.  JURY CHARGE**

8

In his second issue, Reza argues that the trial court erred by failing to instruct the jury regarding the State's election. The State concedes charge error, but it disputes that Reza was harmed. Accordingly, we will review whether Reza was harmed by the trial court's failure to include in the jury charge an instruction that the jury was to consider only the elected acts in deciding Reza's guilt and that limited the jury's consideration of extraneous sexual offenses to the purpose of determining the relationship between Reza and A.H. or their states of mind. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (permitting admission of evidence of extraneous sexual offenses between defendant and child-victim for its bearing on their states of mind and previous and subsequent relationship); *Dixon v. State*, 201 S.W.3d 731, 734–36 (Tex. Crim. App. 2006); *Rivera v. State*, 233 S.W.3d 403, 406 (Tex. App.—Waco 2007, pet. ref'd) (explaining that, when State makes election, defendant is entitled to jury instruction to consider only elected act in deciding guilt and limiting jury's consideration of all other unelected acts to purposes for which they were admitted).

## A. Standard of Review

### 1. The Parties' Arguments

The parties dispute the applicable standard of review. Relying on the court of criminal appeals's opinion in *Phillips*, Reza argues that the trial court's failure to inform the jury of the State's election implicated his right to a unanimous verdict and placed him in the same position as if no election had been made; consequently, Reza submits that the error is constitutional and that harm is

9

analyzed under rule of appellate procedure 44.2(a). *See Phillips*, 193 S.W.3d at 913–14 (holding that failure to require State to elect upon timely request jeopardizes defendant's right to a unanimous jury verdict and is constitutional error); *see also* Tex. R. App. P. 44.2(a) (requiring reversal for constitutional error unless appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment); *Duffey v. State*, 326 S.W.3d 627, 630–31 (Tex. App.—Dallas 2009, no pet.) (applying *Phillips*'s harm analysis to election-charge error because error "placed [defendant] in the same position as if no election had been ordered or made"). The State, on the other hand, argues that the error is a charge error and that, because Reza failed to object, the egregious harm standard applicable to unobjected-to charge error applies. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). The State further contends that this court and other appellate courts have rejected application of the constitutional harm analysis to election-charge errors. *See Smith*, 2010 WL 3377797, at *11–15; *see also Isenhower*, 261 S.W.3d at 175–77.

### 2. *Phillips v. State:  Harm Analysis Applicable to Failure to Require State to Elect*

In *Phillips*, the court of criminal appeals held that when a trial court fails to require the State to elect which transaction it intends to rely upon for conviction

after the defendant timely requests such an election—whether the defendant makes his request after the State rests or after the close of all the evidence—the trial court commits constitutional error. *See* 193 S.W.3d at 912–13. The court explained that when multiple incidents are presented to the jury and the State is not required to elect, "[s]ix jurors could convict on the basis of one incident and six could convict on another (or others)." *Id.* at 913. The court held,

> Consideration of these incidents without an election jeopardizes the defendant's right to a unanimous jury verdict as guaranteed by the Texas Constitution, even though the extraneous incidents may be admissible for other purposes under Article 38.37 of the Code of Criminal Procedure. When the Texas Constitution is violated, as it was in the case before us, the proper analysis is provided by Rule of Appellate Procedure 44.2(a).
>
> In addition to protecting the unanimity of the jury verdict, an election is also required in order to provide adequate notice and an opportunity to defend. The deprivation of notice also implicates of fundamental constitutional principles, *viz*: due process and due course of law.

*Id.* at 913–14 (footnotes omitted).

In *Dixon*, the court of criminal appeals reaffirmed its holding in *Phillips* and considered the following four main purposes underlying the election rule to determine whether the appellant had been harmed with regard to the failure to elect: (1) the appellant's need to be protected from the admission of extraneous offenses; (2) the risk that the jury found the appellant guilty of the charged offense not because they were proven beyond a reasonable doubt but because of the admission of the extraneous offenses; (3) the risk of a nonunanimous verdict; and (4) whether the admission of the extraneous offenses deprived the

11

appellant of adequate notice regarding which offense to defend against. *Dixon*, 201 S.W.3d at 734–36.

### 3. Harm Analysis Applicable to Election-Charge Error

Both *Phillips* and *Dixon* address harm when the State fails to elect upon request; they do not deal with a harm analysis when the State makes an election, yet the trial court fails to include in its jury charge an instruction regarding the State's election. It appears that there is a split among the courts of appeals as to the applicable standard of review when faced with the latter situation.

In *Duffey*, the Dallas Court of Appeals analyzed an unpreserved charge error based on the trial court's failure to instruct the jury on the State's election. 326 S.W.3d at 631. The court of appeals rejected the State's position that "the error [was] mere charge error" and instead held that *Phillips*'s constitutional harm analysis applied because the error "placed [the defendant] in the same position as if no election had been ordered or made." *Id.*; *see also Demps v. State*, 278 S.W.3d 62, 68–69 (Tex. App.—Amarillo 2009, pet. ref'd) (applying rule 44.2(a) to trial court's failure to include instruction requiring unanimity as to one distinct offense and holding that error did not contribute to conviction).

On the other hand, the Houston Fourteenth Court of Appeals has refused to apply the constitutional harm analysis to election-charge error. *See Isenhower*, 261 S.W.3d at 176. In *Isenhower*, the trial court granted the defendant's request for an election but failed to include an instruction in the jury charge; in addressing harm, the court of appeals distinguished *Phillips* because

12

that case deals with election error, whereas Isenhower was complaining of charge error. *See id.* at 175.[3] Because Isenhower failed to object to the charge error, the appellate court applied the egregious harm standard of review. *Id*.

In our unpublished opinion in *Smith*, the parties raised the same arguments regarding the applicable standard of review as they do here. 2010 WL 3377797, at *2. Rejecting the appellant's contention that the constitutional harm standard of review should apply, in *Smith* we instead conducted a harm analysis under *Almanza*'s "some harm" standard of review applicable to preserved jury-charge errors. *Id.* at *2, 11–15; *see also Pope v. State*, Nos. 02-08-00235-CR, 02-08-00236-CR, 02-08-00237-CR, 2009 WL 3416459, at *12–13 (Tex. App.—Fort Worth Mar. 3, 2010, pet. ref'd) (mem. op., not designated for publication) (applying "some harm" standard to trial court's error in failing to instruct jury on State's election after defendant timely objected to jury charge). In our harm analysis in *Smith*, we analyzed any possible harm in light of *Phillips*'s four purposes of the election requirement and held that the trial court's failure to

---

[3]In *Isenhower*, at least twice prior to the introduction of certain evidence, the trial court gave the jury a limiting instruction to consider testimony regarding extraneous acts for the limited purpose of determining the previous relationship between the appellant and the complainant. 261 S.W.3d at 176. Thus, the jury was made aware of the State's election, of which incident was the charged offense, and of which incidents were extraneous acts. *Id.* In *Duffey*, however, like here, the jury was never notified of the State's election. 326 S.W.3d at 631. The Dallas Court of Appeals in *Duffey* emphasized this fact in distinguishing *Isenhower*, but it ultimately concluded that the presence or absence of the jury during the State's election did not affect the trial court's failure to properly instruct the jury on the legal effect of the State's election. *Id.* at 631–32.

instruct the jury on the State's election did not harm the appellant regarding all but one count. *See Smith*, 2010 WL 3377797, at *11–15.[4]

Today, we reaffirm our holding in *Smith*, and we disagree with *Duffey*. As the State points out on appeal, "Texas courts have not approached jury charge issues solely from the perspective of . . . whether or not a constitutional right was involved, even when addressing charge issues that potentially implicate jury unanimity." *See Ngo v. State*, 175 S.W.3d 738, 748–49 (Tex. Crim. App. 2005) (applying egregious harm standard to erroneous jury charge that permitted non-unanimous verdict when defendant failed to object to charge). Because Reza did not object to the trial court's failure to include in the jury charge an instruction regarding the State's election, we must decide whether the error was so egregious and created such harm that Reza was deprived of a fair and impartial trial—in short, that "egregious harm" has occurred. *See* Tex. Code Crim. Proc. Ann. art. 36.19; *Allen*, 253 S.W.3d at 264; *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171; *see also Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("A claim of jury-charge error is reviewed using the procedure set out in *Almanza* . . . ."). As we did in *Smith*, we will analyze any potential harm in light of the four purposes of the election requirement. *See Smith*, 2010 WL 3377797, at *11–12; *see also Phillips*, 193 S.W.3d at 910.

---

[4]We further explained, "Even if we were to apply the constitutional harm standard applied in *Duffey*, we would conclude and hold that the error was harmless beyond a reasonable doubt as to those counts." *Id.* at *14 n.13 (citing Tex. R. App. P. 44.2(a)).

14

## B. Harmless Error

The jury acquitted Reza of the second count alleged in the indictment—sexual assault of A.H. by causing A.H.'s sexual organ to contact his sexual organ; consequently, we will address harm only as it relates to his conviction for the first count alleged in the indictment—sexual assault of A.H. by digital penetration. *See, e.g.*, *Rivas v. State*, 787 S.W.2d 229, 231 (Tex. App.—Corpus Christi 1990, pet. denied) (holding that appellant failed to show that trial court's failure to quash two counts in indictment harmed him when jury did not convict him of either alleged offense).

### 1. Protection from Extraneous Offenses

Regarding the first purpose of the election rule—Reza's need to be protected from the admission of extraneous offenses—article 38.37 permits evidence of other extraneous sexual acts committed by him on A.H. to show the relationship between them and their states of mind. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. Consequently, Reza was not entitled to protection from the evidence of extraneous offenses involving A.H. *See Dixon*, 201 S.W.3d at 734; *Phillips*, 193 S.W.3d at 909–10.

### 2. Risk of Conviction Based on Extraneous Offenses

Regarding the second purpose of the election rule—the risk that the jury found Reza guilty of the sexual-assault-by-digital-penetration offense not because it was proven beyond a reasonable doubt but because of the admission of the extraneous offenses—the multiple acts of sexual assault were all

15

recounted by the same person, A.H.  Thus, "[t]his case is not concerned with evidence of different activities from different sources that a jury might perceive to 'add up' to the defendant being guilty even though no individual offense was proven beyond a reasonable doubt."  *Dixon*, 201 S.W.3d at 735.

And as we explained in *Smith*, in cases involving "complainant testimony of a continuing course of the same type of nonspecific, indistinguishable conduct over a long time period, the issue is typically whether the jury believes the complainant generally or not at all."  2010 WL 3377797, at *13.  A.H. was general in her description of the assaults; she did not separately detail each time Reza touched her and she did not give specific dates, other than to testify that the last time Reza touched her was after a party at his house on Thanksgiving 2006.  A.H. testified generally that Reza first touched her when she was eight years old, that it usually happened at his home while they were alone at night, and that Reza continued to touch her when she moved into his and Daisy's house in 2006.  According to A.H., Reza would stick his hand down her pants and touch her "wiggly part"; sometimes he would put cream on his fingers; sometimes it happened in Daisy's room while A.H. was watching TV; and sometimes it happened at night while A.H. was sleeping on the futon in the living room.

The indictment alleged that the digital penetration offense occurred on or about January 6, 2006, which was around the time that A.H. and her family

16

moved into Reza and Daisy's home.[5]  A.H.'s testimony was corroborated by her mother, Farzana, who testified that A.H. began acting differently and did not want to live at Reza's house when they moved to Texas; that when they moved out A.H. did not want to go inside Reza's house; and that A.H. ultimately told her what Reza had done.

There is little, if any, risk that the jury convicted Reza based solely on the extraneous offenses.  That is, if the jury believed that A.H.'s testimony about Reza digitally penetrating her female sexual organ on several occasions was credible as to one of those occasions, then the jury likewise must have believed that her testimony was credible as to all of them.  *See Dixon*, 201 S.W.3d at 735; *Smith*, 2010 WL 3377797, at *12.

### 3.  Risk of Nonunanimous Verdict

Regarding the third reason for the election rule—the risk of a nonunanimous verdict—there is no question that the jurors unanimously agreed that Reza intentionally or knowingly penetrated A.H.'s sexual organ with his finger on at least one occasion.  *See Dixon*, 201 S.W.3d at 735 n.23 ("Clearly, however, the jurors unanimously agreed that appellant committed at least one sexual assault . . . described by the complainant.").  The issue is whether each

---

[5]Although the indictment included a specific date on which the offense was alleged to have occurred, the jury was instructed that the State was not required to prove the exact date alleged in the indictment but was also allowed to prove that the offense was committed any time prior to the presentment of the indictment.

and every juror agreed that Reza committed the same, single, specific criminal act. *See Ngo*, 175 S.W.3d at 745.

The trial court's charge instructed the jury to consider testimony about Reza's extraneous offenses only in determining his and A.H.'s states of mind and their previous and subsequent relationship, if any. *See* Tex. Code Crim. Proc. Ann. art. 38.37, §§ 1(1), 2. The charge did not, however, instruct the jury as to which acts it was to consider in determining the guilt-innocence inquiry and as to which offenses were merely extraneous. And although the charge instructed the jury that their verdict must be by unanimous vote of all jury members, it did not inform the jury that they had to unanimously agree on a specific act in order to convict on each count.

As we explained above, A.H.'s testimony was general in nature; she did not explain any one incident in more detail than another but instead testified as to the time frame during which Reza sexually assaulted her, beginning when she was eight years old and ending around Thanksgiving 2006, and she related the sequence of events that occurred during those assaults—Reza touched her over her clothes and on her skin, sometimes he used cream, and it hurt. All of the assaults happened in Reza's house, usually at night either in his bedroom or in the living room where A.H. sometimes slept.

This is not a case in which the complainant described multiple specific incidents such that some jurors could have relied on one specific incident and other jurors could have relied on another specific incident. *See, e.g., Farr v.*

18

*State*, 140 S.W.3d 895, 900–01 (Tex. App.—Houston [14th Dist.] 2004) ("[T]he offense of oral sex was described in detail more than once, potentially allowing the jury to convict because some of the jurors relied upon one incident and others relied upon another."), *aff'd sub nom. by Phillips*, 193 S.W.3d at 904; *Phillips v. State*, 130 S.W.3d 343, 353–54 (Tex. App.—Houston [14th Dist.] 2004) (op. on reh'g) (holding election error was harmful because complainant testified about two specific occurrences of sexual assault), *aff'd*, 193 S.W.3d at 904. This is also not a case in which the complainant's testimony was so general in nature that it did not allege individual incidents. *See, e.g.*, *Farr*, 140 S.W.3d at 901 (holding testimony that defendant digitally penetrated complainant "every chance he got" was so general that court could not be certain that trial court's failure to require State to elect did not contribute to conviction).

The facts of this case are more analogous to those in *Dixon*, where the complainant described the manner in which the appellant sexually assaulted her and said that it occurred numerous times—"*all* of the incidents presented in the case were presented with equal specificity, and, except for the fact that one incident occurred during the day, none of the incidents were distinguished in any manner from each other." 201 S.W.3d at 734. Reasoning that there was simply no basis in the record for the jury to believe that one incident occurred during the day but that none occurred at night, the court of criminal appeals perceived no risk of a non-unanimous verdict. *Id.* at 735 & n.23; *see also Hulsey v. State*, 211 S.W.3d 853, 856 (Tex. App.—Waco 2006, no pet.) (following *Dixon* and holding

19

that trial court's error in failing to require State to elect was harmless when testimony showed that defendant touched complainant's breasts and genitals every morning that he could when complainant's mother was at work).

Likewise, here, we perceive little to no risk that any juror would have believed that A.H.'s testimony as to the incidents of digital penetration was credible as to one incident but not as to another. *See Dixon*, 201 S.W.3d at 735.

### 4. Notice

Regarding the fourth purpose of the election requirement—whether Reza was deprived of adequate notice regarding which offense to defend against— Reza's defense counsel did not request an election before presenting his defense. By not seeking an election until after the close of all the evidence, he was not entitled to an election at the close of the State's evidence. *See Phillips*, 193 S.W.3d at 912. And when he did request an election, he received adequate notice of the State's election, as we explained in part III of our opinion. In fact, when the State made its election, defense counsel responded that he "underst[oo]d what they [the State] said." Furthermore, defense counsel never indicated that Reza's defense was adversely affected by not receiving notice of the State's election until after the close of all the evidence. For these reasons, the notice concerns do not weigh in favor of finding harm. *See Duffey*, 326 S.W.3d at 634 (holding due process concerns not implicated when defendant received timely notice of State's election upon request and when counsel

expressly acknowledged understanding the election and did not indicate that defense was adversely affected).

### 5. *Factors Weigh Against Finding Harm*

Having considered the harm to Reza in light of the four main purposes underlying the election rule, we hold that the trial court's error in failing to instruct the jury regarding the State's election was not so egregious and did not create such harm as to deny Reza a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *see also Dixon*, 201 S.W.3d at 734–36; *Phillips*, 193 S.W.3d at 913–14; *see generally Hutch*, 922 S.W.2d at 172–74. Consequently, we overrule Reza's second issue.

### V. Conclusion

Having overruled Reza's two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 17, 2011

21