# CAUSE NUMBER PD-0258-15

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

# CHARLES LEE HODGES,

**Petitioner,**

vs.

# THE STATE OF TEXAS,

**Respondent.**

---

**SEEKING REVIEW OF THE ELEVENTH COURT OF APPEALS' JUDGMENT AND OPINION IN CAUSE NUMBER 02-13-00073-CR**

---

# PETITION FOR DISCRETIONARY REVIEW

**WM. REAGAN WYNN**
**SBN: 00797708**

**KEARNEY | WYNN**
**ONE MUSEUM PLACE**
**3100 WEST 7TH STREET, SUITE 420**
**FORT WORTH, TEXAS 76107**
**(817) 336-5600**
**(817) 336-5610 (fax)**
**rwynn@kearneywynn.com**

**ORAL ARGUMENT IS REQUESTED**          **ATTORNEY FOR PETITIONER**

## *IDENTITY OF PARTIES AND COUNSEL*

| | | |
|---|---|---|
| The parties to the trial court's judgment are: | Charles Lee Hodges | Defendant |
| | The State of Texas | Prosecution |
| Trial counsel were: | Hon.  Samuel W. Pettigrew, Jr.<br>840 S. Carrier Parkway<br>Grand Prairie, Texas 75051 | Defense Counsel |
| | Hon. Lisa A. Callaghan<br>Hon. Dawn N. Ferguson | Prosecutor<br>Prosecutor |
| | Tarrant County District Attorney's Office<br>401 West Belknap<br>Fort Worth, Texas 76196<br>(817) 884-1400 | |
| Appellate counsel are: | Wm. Reagan Wynn<br>Kearney \| Wynn<br>One Museum Place<br>3100 West 7th Street, Suite 420<br>Fort Worth, Texas 76107<br>(817) 336-5600<br>(817) 336-5610 (fax) | Appellant/Petitioner |
| | Hon. Edward L. Wilkinson | State of Texas |
| | Tarrant County District Attorney's Office<br>Appellate Section<br>Address above | |

## *TABLE OF CONTENTS*

*IDENTITY OF PARTIES AND COUNSEL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

*INDEX OF AUTHORITIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

*STATEMENT REGARDING ORAL ARGUMENT* . . . . . . . . . . . . . . . . . . . . . . . . v

*STATEMENT OF PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . vi

QUESTION PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REASONS FOR REVIEW, ARGUMENTS, AND AUTHORITIES . . . . . . . . . . 2

     I.     THE COURT OF APPEALS ERRED BY APPLYING THE ARTICLE 36.19/*ALMANZA* EGREGIOUS HARM STANDARD RATHER THAN THE CONSTITUTIONAL ERROR RULE 44.2(a) HARMLESS BEYOND A REASONABLE DOUBT STANDARD TO THE TRIAL COURT'S FAILURE TO INFORM THE JURY OF THE STATE'S ELECTION OF THE SPECIFIC INSTANCE OF CONDUCT UPON WHICH IT WAS RELYING FOR CONVICTION AFTER THE DEFENSE REQUESTED THE ELECTION. . . . . . . . . . . . . . . . . . 2

          A.    The Record Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          B.    The Court of Appeals Opinion . . . . . . . . . . . . . . . . . . . . . . . . 5

          C.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION . . . 8

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Court of Appeals' Opinion and Judgment . . . . . . . . . . . . . . . . . . . . . . . Appendix 1

Court of Appeals' Order Denying Rehearing  . . . . . . . . . . . . . . . . . . .  Appendix 2

# INDEX OF AUTHORITIES

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) . . . . . . 5

*Cosio v. State*, 353 S.W.3d 766 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . 5-7

*Dixon v. State*, 201 S.W.3d 731 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . 6

*Duffey v. State*, 326 S.W.3d 627 (Tex. App.–Dallas 2009, no pet.) . . . . . . . . . . 5, 6

*Hodges v. State*, No. 02-13-00073-CR, 2014 WL 7204668 (Tex. App.–Fort Worth December 18, 2014, no pet. h.) (mem. op., not designated for publication) . . viii, 2, 3, 5

*Phillips v. State*, 193 S.W.3d 904 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . 6

*Reza v. State*, 339 S.W.3d 706 (Tex App.–Fort Worth 2011, pet ref'd) . . . . . . . . . 5

**Statutes and Rules**

TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006) . . . . . . . . . . . . . . . . . . . 5

TEX. R. APP. P. 44.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. R. APP. P. 66.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. R. APP. P. 66.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. R. APP. P. 68.4(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

COMES NOW *CHARLES LEE HODGES*, Petitioner, by and through his attorney of record, WM. REAGAN WYNN, and pursuant to Rule 68, Texas Rules of Appellate Procedure, files this *PETITION FOR DISCRETIONARY REVIEW*, and for such Petition would show this Court as follows:

### *STATEMENT REGARDING ORAL ARGUMENT*

This Petition challenges the court of appeals' application of the egregious harm standard set required for unobjected to jury charge error rather than the harmless beyond a reasonable doubt standard applicable to errors implicating fundamental Constitutional principles of unanimity and notice to a trial court's total failure to inform the jury of the specific conduct elected by the State to support a conviction. The court of appeals' decision in this case is in direct conflict with a decision from another court of appeals and resolves an important issue of Texas law that has never been directly resolved by this Court. Therefore, this Court should grant oral argument so that counsel for both sides may more fully present their positions and answer any questions this Court may have after preliminarily reviewing this case.

## STATEMENT OF THE CASE

Petitioner was convicted by a Tarrant County jury of one count of indecency with a child by contact for touching the female sexual organ of his biological daughter with his hand. Testimony was presented at trial concerning several alleged instances of conduct that, if believed beyond a reasonable doubt, could have supported a conviction for indecency with a child.

Outside the presence of the jury, counsel for the State "elected" to proceed with the testimony concerning the "first time" the alleged injured party claimed Petitioner touched her in this manner, i.e., a time when she was nine years old. However, the jury was never informed of this "election" and the trial court took no action to limit the jury's consideration the specific instance elected by the State. The State conceded that the trial court erred by failing to instruct the jury on the State's election and the court of appeals held that the trial court erred by failing to do so. However, the court of appeals determined that the proper harm standard is the egregious harm standard set out for unobjected to jury charge error and, applying that standard, held that the error was harmless.

## STATEMENT OF PROCEDURAL HISTORY

By an indictment filed March 17, 2010, Petitioner was charged two counts of indecency with a child alleged to have been committed on or about August 1, 2009,

against his biological daughter.[C.R. 6] Count One of the Indictment alleged that Petitioner, acting with the intent to arouse and gratify his own sexual desire, engaged in sexual contact by touching his daughter's female sexual organ.[C.R. 6] Count Two alleged that Petitioner, acting with the intent to arouse and gratify his own sexual desire, engaged in sexual contact by touching his daughter's breast.[C.R. 6]

On November 6, 2012, Petitioner appeared in court with his counsel, was arraigned, and entered a plea of "not guilty" to both of the allegations in the Indictment. [2 R.R. 6-8]

Thereafter, a jury was selected,[2 R.R. 16-237] seated,[6 R.R. 237] and sworn.[6 R.R. 237] The Indictment was read in the presence of the jury and Petitioner again entered pleas of "not guilty" to both of the allegations against him.[2 R.R. 245-46]

Trial on the merits was conducted over two days from November 7-8, 2012.[3 R.R. 6-219; 4 R.R. 6-209] On November 9, 2012, the court gave the case to the jury.[C.R. 89-82; 15 R.R. 90] On November 12, 2012, the jury returned verdicts of "guilty" to the allegation in Count One of the Indictment and "not guilty" to the allegation in Count Two of the Indictment.[6 R.R. 7; C.R. 93]

The trial on punishment was conducted on January 22, 2013. After hearing testimony and considering a Presentence Investigation Report, the trial court assessed Petitioner's punishment on Count One at incarceration for eight years .[7 R.R. 106]

The trial court entered its Judgment of Conviction by Jury in accordance with the jury's verdict on Count One on January 24, 2013.[C.R. 108-09] The trial court entered its Judgment of Acquittal by Jury in accordance with the jury's verdict on Count Two on the same date.[C.R. 111] Petitioner timely filed his Notice of Appeal on February 19, 2013.[C.R. 121-22]

The Second Court of Appeals affirmed the trial court's judgment and sentence on July 26, 2006. *See Hodges v. State*, No. 02-13-00073-CR, 2014 WL 7204668 (Tex. App.–Fort Worth December 18, 2014, no pet. h.) (mem. op., not designated for publication).[1] After receiving two extensions of time, Petitioner timely filed his Motion for Rearing on January 26, 2015. The Second Court of appeals denied the Motion for Rehearing on February 5, 2015.[2]

---

[1] A copy of the Court of Appeals' Opinion is attached to this Petition as Appendix 1. *See* TEX. R. APP. P. 68.4(i).

[2] A copy of the Court of Appeals' Order Denying Rehearing is attached to this Petition as Appendix 2.

On March 10, 2015, this Court entered an order granting Petitioner's First Motion for Extension of Time to File Petition for Discretionary Review. Pursuant to the Order, this Petition is timely if filed in this Court on or before April 8, 2015.

## *QUESTION PRESENTED FOR REVIEW*

Petitioner was convicted of one count of indecency with a child by contact, but testimony was presented of several separate incidents of conduct alleged to have been committed by Petitioner against the alleged injured party that could have supported conviction for that single count. Petitioner's trial counsel requested that the State be forced to elect a specific instance of alleged conduct, the trial court purported to grant this request, and, outside the presence of the jury, the State announced its election. However, the election was erroneously never communicated in any way to the jury. Did the court of appeals err by analyzing the harm arising from this error under the egregious harm standard set required for unobjected to jury charge error rather than the harmless beyond a reasonable doubt standard applicable to errors implicating fundamental Constitutional principles of unanimity and notice?

*REASONS FOR REVIEW, ARGUMENTS, AND AUTHORITIES*

**I.**

**THE COURT OF APPEALS ERRED BY APPLYING THE ARTICLE 36.19/*ALMANZA* EGREGIOUS HARM STANDARD RATHER THAN THE CONSTITUTIONAL ERROR RULE 44.2(a) HARMLESS BEYOND A REASONABLE DOUBT STANDARD TO THE TRIAL COURT'S FAILURE TO INFORM THE JURY OF THE STATE'S ELECTION OF THE SPECIFIC INSTANCE OF CONDUCT UPON WHICH IT WAS RELYING FOR CONVICTION AFTER THE DEFENSE REQUESTED THE ELECTION.**

**A.      The Record Below**

Count One of the indictment alleged that,  on or about August 1, 2009, Petitioner, acting with the intent to arouse and gratify his own sexual desire, engaged in sexual contact by touching the alleged injured party's female sexual organ.[C.R. 6]

As set forth in the court of appeals' opinion, at trial, the alleged injured party testified that Petitioner touched her breasts and crotch "many times" starting when she was "nine years old."[3 R.R. 70-73] *See Hodges*, 2014 WL 7204668, at *2-3. Further, the alleged injured party's "outcry statement" described "multiple events" or "multiple scenarios" of "touching."[4 R.R. 174] *See id.* at *1. Finally, Petitioner described both to the police Detective and during his trial testimony, a single event occurring during his first weekend visitation with the alleged injured party in August 2009 (when she would have been 11 years old, just about to turn 12) wherein she placed his hand in

her crotch area, but effectively explained that he had no intent to arouse or gratify his sexual desire during the event. *See id.* at *4. In short, there was evidence presented from several different sources indicating that multiple occurrences of the alleged conduct – i.e., touching the alleged injured party's female sexual organ – occurred.

The day before jury selection, Petitioner filed a Motion requesting that State be required to elect "what offenses the State will rely on to convict on each count" of the Indictment.[C.R. 65-66]

During a discussion outside the presence of the jury just prior to the State calling its last rebuttal witness to testify, the trial court took up the issue of Petitioner's request that the State be required to "elect" and the following exchange occurred:

> THE COURT: One other thing that was discussed, and this may be the appropriate time to bring it up or put it on the record, [Petitioner's trial counsel], you had previously asked or inquired about the State making an election on offenses; is that right?
>
> [Petitioner'S TRIAL COUNSEL]: Yes, Your Honor.
>
> THE COURT: You would still like to do that?
>
> [Petitioner'S TRIAL COUNSEL]: Yes.
>
> THE COURT: It's my understanding that the State is going to make some sort of election. I mean, are y'all prepared to do that at this time?
>
> [STATE'S TRIAL COUNSEL]: Yes, Your Honor. The witness testified that the first fondling offense and the first breast offense occurred in 2009 -- I'm sorry, occurred when she was nine years of age, and it

occurred on the couch at her father's house on Olympia Drive. The first incident she described is the primary offense that we will be pursuing in each count.

THE COURT: So will that be adequate for the defendant? For purposes of double jeopardy or whatever, the State is relying upon the first alleged incident of misconduct when she was nine years old, as I understand it from the State. Is that correct?

[STATE'S TRIAL COUNSEL]: Yes, Your Honor.

THE COURT: And with that being placed on the record and I understand the State will be then arguing that to the jury in its argument.

[STATE'S TRIAL COUNSEL]: Yes, Your Honor.

THE COURT: With that being placed on the record, will that be adequate for the defense?

[Petitioner'S TRIAL COUNSEL]: Yes.

THE COURT: All right.

[4 R.R. 197-98]

This election was never mentioned, in any way, to the jury. There is no mention of the State's election in the Court's written charge to the jury.[C.R. 89-92] Further, review of the record reveals that the State's election was never mentioned in the presence of the jury. Petitioner's counsel below made no objections to the court's charge.[5 R.R. 6]

## B.     The Court of Appeals' Opinion

In his first point of error below, Petitioner argued that the trial court erred by failing to limit the jury's consideration to the particular act designated by the State as the conduct that would support conviction for the offense alleged in count one of the Indictment.  The State conceded that the trial court erred by failing to instruct the jury on the State's election and the court of appeals held that the trial court erred by failing to do so.  *See Hodges*, 2014 WL 7204668, at *4.  The court of appeals then determined that the proper harm standard is the egregious harm standard set out for unobjected to jury charge error[3] and, applying that standard, held that the error was harmless. *See id.* at *5-6.

## C.     Analysis

In determining that the egregious harm standard for unobjected to jury charge error applies to this particular error, the court of appeals relied on this Court's decision in *Cosio v. State*, 353 S.W.3d 766 (Tex. Crim. App. 2011) and their own prior decision in *Reza v. State*, 339 S.W.3d 706 (Tex App.–Fort Worth 2011, pet ref'd).

The court of appeals' decision in *Reza* is directly in conflict with the decision of the Fifth Court of Appeals in *Duffey v. State*.  *See Duffey v. State*, 326 S.W.3d 627,

---

[3]  *See*, *e.g.*, TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

631-32 (Tex. App.–Dallas 2009, no pet.). In *Duffey*, the court of appeals applied the reasoning of this Court's decisions in *Phillips v. State*, 193 S.W.3d 904 (Tex. Crim. App. 2006), and *Dixon v. State*, 201 S.W.3d 731 (Tex. Crim. App. 2006), to hold that for this exact type of error – failure to in any way instruct the jury on the State's election in a child sex case – is subject to Constitutional harm analysis under Rule 44.2(a), Texas Rules of Appellate Procedure, because the error implicates fundamental Constitutional principles of unanimity and notice. *See Duffey*, 326 S.W.3d at 631-32. *Duffey* has never been expressly overruled or disavowed by this Court. Petitioner respectfully asserts that the court of appeals erred by evaluating the harm arising from the trial court's erroneous failure to instruct the jury on the State's election under the egregious harm standard and instead should have reversed the trial court's judgment unless it determined beyond a reasonable doubt that the error did not contribute to Petitioner's conviction. *See Duffey*, 326 S.W.3d at 632 (citing TEX. R. APP. P. 44.2(a)).

Further, the facts underlying this Court's decision in *Cosio* are distinguishable from the facts in this case. Cosio was convicted of four separate counts of sexual assault of/indecency by contact with a minor female. *See Cosio*, 353 S.W.3d at 769-70. The evidence presented at trial was such that there were two different incidents of conduct that could have satisfied the allegations in Count One, two different

incidents of conduct that could have satisfied the allegations in Count Two, and three different incidents of conduct that could have satisfied the allegations in Counts Three and Four. *See id.* at 770-71. Cosio's attorney did NOT request that the State be required to elect a specific instance of conduct for each specific count. *See id.* at 776-77. Therefore, this Court determined that the error was purely a jury charge error for failing to require jury unanimity – not for failing to implement the State's election. As such, *Cosio* does not directly address the situation in this case.

Under these circumstances, this Court should grant review in this matter to settle an important open question of State law resolved by the court of appeals that has not previously been addressed by this Court: does a trial court's erroneous failure to somehow instruct the jury on the State's election of the specific conduct to support a conviction amount to a Constitutional error reviewable under Rule 44.2(a) or is it simply jury charge error reviewable under the article 36.19/*Almanza* standard? *See* TEX. R. APP. P. 66.3(b). Further, this Court should grant review in this matter to resolve the conflict between the Second Court of Appeals' decisions in this case and *Reza* and the Fifth Court of Appeals' decision in *Duffey*. *See* TEX. R. APP. P. 66.3(a).

### *PRAYER*

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that this Court will grant this Petition for Discretionary Review, order a full briefing of the

issues presented herein, and after considering the merits, reverse the judgment of the court of appeals, remand this cause to the trial court for a new trial, and grant such other and further relief as he may show himself deserving, at law and in equity.

Respectfully submitted,

 /s/ Wm. Reagan Wynn
WM. REAGAN WYNN
State Bar No. 00797708

KEARNEY | WYNN
One Museum Place
3100 West 7th Street, Suite 420
Fort Worth, Texas 76107
(817) 336-5600
(817) 336-5610 (fax)
rwynn@kearneywynn.com

ATTORNEY FOR PETITIONER

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I certify that this Petition was prepared with WordPerfect X5 using Times New Roman 14 point font, and that, according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(1) contain **1,466** words.

 /s/ Wm. Reagan Wynn
WM. REAGAN WYNN

## CERTIFICATE OF SERVICE

This is to certify that a copy of this Petition has been forwarded to:

Edward L. Wilkinson
Tarrant County District Attorney's Office
401 W. Belknap
Fort Worth, Texas 76196-0201
coaapellatealerts@tarrantcounty.com

Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

on the 8th day of April, 2015.

    /s/ Wm. Reagan Wynn
WM. REAGAN WYNN

APPENDIX 1

2014 WL 7204668
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH TEX. R. APP. P. 47.2(B)
Court of Appeals of Texas,
Fort Worth.

Charles Lee Hodges, Appellant

v.

The State of Texas, State

NO. 02–13–00073–CR    |
DELIVERED: December 18, 2014     |
Rehearing Overruled February 5, 2015

FROM THE 297TH DISTRICT COURT OF TARRANT
COUNTY TRIAL COURT NO. 1181223D

**Attorneys and Law Firms**

Wm Reagan Wynn, Kearney Wynn, Fort Worth, TX,
Attorney for Appellant.

Joe Shannon, Jr., Crim. Dist. Atty., Charles Mallin, Asst.
Crim. Dist. Atty., Chief, App. Div., Edward Wilkinson, Lisa
Callaghan, Dawn Ferguson, Asst. Crim. Dist. Attys., Fort
Worth, TX, Attorney for State.

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

**MEMORANDUM OPINION** [1]

[1]    *See* Tex.R.App. P. 47.4.

SUE WALKER, JUSTICE

**\*1** I. Introduction Appellant Charles Lee Hodges appeals his
conviction for indecency with a child. *See* Tex. Penal Code
Ann. § 21.11(a)(1) (West 2011). In three points, he argues that
the trial court erred by failing to include an instruction in the
jury charge on the State's election and abused its discretion
by admitting inadmissible opinion and hearsay testimony. We
will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Hodges dated and eventually lived with Sally [2] for several
years beginning in 1994, and Sally became pregnant with
Hodges's child during that time. Hodges and Sally separated
before the child was born. Sally gave birth to Mary in
September 1997; Hodges went to the hospital for the birth but
had no further contact with Mary until she initiated contact
with him 2004, when she was approximately six and a half or
seven years old.

[2]    To protect the anonymity of the child in this case, we
will use aliases to refer to all individuals named herein
with the exception of the appellant. *See* Tex.R.App. P.
9.10(a)(3); *McClendon v. State,* 643 S.W.2d 936, 936 n.1
(Tex.Crim.App. [Panel Op.] 1982).

Hodges began having supervised visitations with Mary in
2004. He was married to Lana by that time. After several
months, Hodges was awarded standard visitation, with Mary
staying with him and Lana every other weekend.

In 2007, Mary saw photographs of Hodges' wedding and
asked him about "French kissing." Hodges explained what it
was and demonstrated by kissing her and putting his tongue
in her mouth. Mary later "French kissed" her mother and
said that Hodges had shown her how to kiss. Sally reported
the incident to Child Protective Services (CPS), and after an
investigation, CPS "ruled out" sexual abuse.

In 2009, when Mary was nine years old, Sally began to notice
that Mary was clingy when she came home from weekends
at Hodges's house. Mary often called Sally from her bedroom
in Hodges's house and asked Sally to stay on the line in case
Mary needed her. That year, Mary attended a church youth
retreat at Great Wolf Lodge. At the retreat, Mary confided to
her small group leader, Ann, that she was confused about her
sexuality and said that it was because of her dad. Mary told
Ann that Hodges had shown her "inappropriate places" on her
body, had touched her there, and had expected her to do the
same. Mary also said that Hodges "had French-kissed her on
the cheek at Six Flags and expected her to do the same thing
back." Ann took Mary to find the children's pastor from the
church, Jessie, who was also at the retreat. Mary told Jessie
that she thought she was a lesbian because she did not like it
when boys touched her. When Jessie asked which boys had
touched her, Mary said, "not boys ... my dad." Jessie then
consulted with another adult leader at the retreat, Mark. While
talking to Jessie and Mark, Mary said that Hodges "had kissed

her with his tongue, that he had touched her down there, which she motioned with her hands to [be] her private parts, and that he helped her with her bra." Mary also said that Hodges had kissed her "mouth to mouth" and that his tongue had touched her tongue. Mary said that anything that happened between her and Hodges occurred "over a year ago." Mark and Jessie contacted Sally and CPS.

**\*2** Sally went to Great Wolf Lodge and found her daughter crying and "extremely upset." Mark and Jessie told Sally what Mary had told them. Mary kept apologizing to her mother and said that she could not remain silent any longer but did not want to hurt her dad.

Hodges called Sally after the retreat to say he was coming to visit Mary, but Sally refused. After Hodges got angry, Sally told him "that there was an investigation going on" and gave him the phone number for the investigating detective. Sally did not tell Hodges what the investigation was about. Hodges called Detective Aaron Martinez, and the detective recorded the conversation. Although the detective had not yet told Hodges the subject of the investigation, Hodges made comments that made the detective realize that Hodges "automatically assum[ed]" that the investigation involved "something sexual" with Mary. Hodges told the detective that Mary had been acting out sexually. He said that Mary ran around naked at her mother's house and tried to do the same at his house. Hodges also told the detective about an incident when Mary "put [his] hand on her crotch" while the two were sitting next to each other watching TV. Hodges said that he immediately pulled his hand back and told Mary that he was not comfortable with that behavior. Hodges told the detective that he was going to stop contact with Mary "out of self-preservation" because her conduct scared him.

Hodges was ultimately charged with one count of indecency with a child by touching Mary's female sexual organ and with one count of indecency with a child by touching Mary's breast.

At trial, Mary testified that the first incident with Hodges that made her "uncomfortable" occured when she asked him how people "kissed at weddings" when she was nine years old. Hodges demonstrated by putting his tongue in her mouth. Mary testified that Hodges "French kissed" her "almost every other weekend." He kissed her in public once while at Six Flags; they were in line for a snack, he was holding her in his arms, and he kissed her cheek with his tongue. Another time, Hodges lay on top of her in his bedroom, "tongue kiss

[ed]" her ear, and told her to do the same to him. When Mary told him that she did not know how to do that, he "seemed a little mad," which made Mary feel bad. Sometimes Hodges would be in Mary's room when she got out of the shower and would watch her get dressed. Hodges would get mad if she ever locked her bedroom door. [3]

[3] At trial, Lana testified that the doorknob to Mary's bedroom did not have a lock on it, and a photograph of the door was introduced into evidence.

Mary said that Hodges gave her the "birds and the bees talk" when she was nine. Hodges explained sexual intercourse and masturbation to her. Hodges touched himself to demonstrate masturbation, or as he called it, "pleasurization." He told Mary that all guys will want her body, and he moved his hands "[o]ver [her] curves."

Regarding the evidence to support count one of the indictment, which alleged that Hodges committed indecency with a child by touching Mary's female sexual organ, Mary testified,

Q. Now, were there times that [Hodges] touched you on your body parts in a way that made you feel uncomfortable?

A. Yes, ma'am.

**\*3** Q. And can you tell us where you were when this would happen?

A. In the living room at his house.

Q. So do you mean in the living room of [his] house ... ?

A. Yes, ma'am.

Q. And where would you be in the living room?

A. We would be sitting on the couch and we would be on the left side of the couch.

Q. Did he sit there a lot?

A. Yes, ma'am.

Q. And what would you be doing?

A. I would be watching TV.

Q. So would he be watching TV as well?

A. Yes, ma'am.

Q. So the two of you are on the couch watching TV, and what would he do?

A. He would put his arm around me down my breast and down to my private.

Q. When you say your private, are you referring to your genitals or female sexual organ?

A. Yes, ma'am.

Q. Because you're 15 now and you know what that is.

A. Yes, ma'am.

Q. And you said he would put his hand down so that it touched your breast and then touched your genitals?

A. Yes, ma'am.

Mary explained that this happened "[m]any" times, beginning when she was nine years old. She said that she would be wearing either a big T-shirt and underwear or jeans and a T-shirt and that Hodges would rub his hand on her female sexual organ on top of her clothing. She testified that she would try to avoid being near Hodges by sitting on the other side of the couch but that Hodges would act upset or mad so she would go over to where he was sitting. Mary remembered that on three occasions while sitting on the couch, Hodges asked her to touch his "male parts" and took her hand and placed it on his "male genital parts" over his clothing. When Mary moved her hand, he placed it back and told her it was okay to touch him there.

Mary said that she remembered telling Hodges "no" once when he kissed her neck down to her fingertips and him responding by "saying something along the lines of this is what daddies and daughters do." Hodges also told Mary that if she ever told anyone, he would not want to see her again.

On cross-examination, Mary agreed that she had told her counselor that she "had used this alleged sex abuse for bragging rights to get sympathy," as an excuse for bad behavior, and to get attention. She also agreed that Hodges used to get upset with her when she walked around the house without clothes on. Mary agreed that her father gave her the "birds and the bees" talk because she was "infatuated" with a boy across the street. Mary also said on cross-examination that she has a thyroid disease that can cause depression and can affect her emotional feelings.

Detective Martinez also testified at trial, and the recorded conversation between him and Hodges was admitted into evidence. Detective Martinez testified that sex offenders commonly blame their actions on the child victim.

Hodges testified at trial that he talked to Mary about sexuality when she was nine because she was infatuated with a boy across the street and Hodges was worried that she "might try something sexual with him." Hodges said he read about how to talk to children about sex on the Planned Parenthood website. He told Mary that "masturbation is a perfectly normal thing that you do by yourself in private," but he did not describe or demonstrate the act of masturbation. Hodges denied ever showing Mary how to French kiss or kissing her cheek or tongue with his tongue.

**\*4** Hodges testified regarding the incident in 2007 that resulted in the CPS investigation. He and Mary were wrestling on the couch, Mary was on top of him, they grabbed each other's hands and legs so "there was nothing left but our mouths," and they started biting each other. Mary "stuck her tongue down in [his] mouth," and Hodges "jerked back and said no." He later discovered that Mary had also French kissed Sally.

Hodges testified that during Mary's first August weekend visitation in 2009, he and Mary were watching television on the couch when Mary "took [his] hand and put it down in her crotch area." Hodges testified that he "jerked [his] hand back and said no." He said that he was in shock and later told his mother about the incident, although he did not tell Sally. After that incident, he would not allow Mary to sit next to him or kiss him. He also told Mary that he could not be around her if she did "that kind of stuff" again.

Hodges also presented evidence that thyroid problems can cause depression and that depression can lead to hallucinations and delusions that can be sexual in nature.

During the State's case on rebuttal, the trial court required the State to elect what incidents of criminal conduct it relied on for each count of the indictment per Hodges's request for an election. The State elected "the first fondling offense" that occurred on Hodges's couch in 2009, as testified to by Mary. The jury was never informed of the State's election by the trial court or by the parties. And the jury charge did not inform the jury of the State's election. Hodges did not object to the lack of a specific unanimity instruction in the jury charge.

The jury convicted Hodges of count one of the indictment, which alleged that on or about August 1, 2009, Hodges "intentionally, with the intent to arouse or gratify [his] sexual desire ..., engage[d] in sexual contact by touching the female sexual organ of [Mary], a child younger than 17 years and not the spouse of [Hodges]." The jury found him not guilty of the second count, which alleged that on or about August 1, 2009, Hodges "intentionally, with the intent to arouse or gratify [his] sexual desire ..., engage[d] in sexual contact by touching the breast of [Mary], a child younger than 17 years and not the spouse of [Hodges]." The trial court sentenced Hodges to eight years' confinement for count one.

### III. ELECTION INSTRUCTION

In his first point, Hodges argues that the trial court erred by failing to instruct the jury of the State's election. [4] The State concedes error but argues that Hodges was not egregiously harmed by the trial court's error.

[4]    Because the jury acquitted Hodges of count two of the indictment, alleging indecency by touching Mary's breast, this issue relates only to count one, alleging indecency by touching Mary's female sexual organ.

When an indictment alleges one sexual assault, but more than one assault is shown by the evidence at trial, the State is required, upon timely request by the defense, to elect as to the specific incident of sexual assault that the State will use to convict. *See Phillips v. State,* 193 S.W.3d 904, 909–10 (Tex.Crim.App.2006); *O'Neal v. State,* 746 S.W.2d 769, 772 (Tex.Crim.App.1988).* Following the State's election of the act on which it will proceed for conviction, the defendant is entitled to an instruction charging the jury to consider only the elected act in deciding guilt and limiting the jury's consideration of all other unelected acts to the purposes for which they were admitted. *Duffey v. State,* 326 S.W.3d 627, 630 (Tex.App.—Dallas 2009, no pet.), *disagreed with on other grounds by Reza v. State,* 339 S.W.3d 706 (Tex. App—Fort Worth 2011, pet. ref'd); *see Cosio v. State,* 353 S.W.3d 766, 776 (Tex.Crim.App.2011). No such instruction was included in the jury charge in this case, and because Hodges did not object to the lack of a proper unanimity instruction, we must evaluate the error for egregious harm. *See Cosio,* 353 S.W.3d at 776–77 (holding that appellant forfeited any constitution-based jury charge claim by not objecting that charge allowed for non-unanimous verdict); *Reza,* 339 S.W.3d at 714.

**\*5** An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Cosio,* 353 S.W.3d at 777. In conducting our harm analysis, we must decide whether the error was so egregious and created such harm that Hodges was deprived of a fair and impartial trial —in short, that "egregious harm" has occurred. *See Celis v. State,* 416 S.W.3d 419, 423 n.3 (Tex.Crim.App.2013); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g); *see* Tex.Code Crim. Proc. Ann. art. 36.19 (West 2006). When assessing harm based on the particular facts of the case, the reviewing court should consider the charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the parties' arguments, and all other relevant information in the record. *See Cosio,* 353 S.W.3d at 777.

Because the harm in this case stems from the trial court's failure to inform the jury of the State's election, we will also analyze any potential harm in light of the four purposes of the election requirement: (1) the appellant's need to be protected from the admission of extraneous offenses; (2) the risk that the jury found the appellant guilty of the charged offense not because it was proven beyond a reasonable doubt but because of the admission of the extraneous offenses; (3) the risk of a nonunanimous verdict; and (4) whether the admission of the extraneous offenses deprived the appellant of adequate notice regarding which offense to defend against. *Reza,* 339 S.W.3d at 713, 715; *see also Dixon v. State,* 201 S.W.3d 731, 734–36 (Tex.Crim.App.2006).

Here, the jury charge required only that the jurors "unanimously agree[ ] upon a verdict," without requiring unanimity based on the evidence presented in the case. Thus, the charge permitted a non-unanimous verdict. *See Cosio,* 353 S.W.3d at 777. Neither party mentioned the State's election during closing arguments, but neither party "added to the charge error[ ] by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct." *Id.*

Regarding the state of the evidence, Mary described how, beginning when she was nine years old, Hodges would put his arm around her while they watched TV on his couch and would touch her breast and her "private." Hodges testified and admitted to touching Mary's sexual organ, explaining that Mary was the one who grabbed his hand and placed it there. The jury heard Hodges's recorded telephone conversation with Detective Martinez, in which Hodges said that Mary had

grabbed his hand and placed it on her sexual organ. Detective Martinez testified that sex offenders commonly blame their actions on their child victims.

We will also consider the four purposes of the election rule in our harm analysis. *See Reza,* 339 S.W.3d at 715. Regarding the first purpose—Hodges's need to be protected from the admission of extraneous offenses—the lack of a specific unanimity instruction in the jury charge was harmless in regard to this purpose because evidence of other extraneous sexual acts between him and Mary were admissible to show their relationship and states of mind under article 38.37. *See* Tex.Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp.2014); *see Dixon,* 201 S.W.3d at 734; *Phillips,* 193 S.W.3d at 909–10; *Reza,* 339 S.W.3d at 715.

The risk that the jury found Hodges guilty of indecency by touching Mary's sexual organ based on the admission of extraneous offenses, rather than proof of the charged offense beyond a reasonable doubt—the second purpose of the election requirement—was low in this case. Mary herself was the one who recounted the multiple acts of indecency here, and she testified generally that Hodges fondled her "many times" on his couch while they were watching television, with the first occurring when she was nine years old. The jury was not persuaded by Hodges's explanation that Mary initiated the touching. As the court of criminal appeals explained in *Dixon,*

> **\*6** This case is not concerned with evidence of different activities from different sources that a jury might perceive to "add up" to the defendant being guilty even though no individual offense was proven beyond a reasonable doubt. Moreover, the child complainant did not testify about a number of varied incidents with differing details that might have incrementally added to the idea that the defendant must have done something to provoke the plethora of stories about his activities.

201 S.W.3d at 735. And as we have stated before, "in cases involving 'complainant testimony of a continuing course of the same type of nonspecific, indistinguishable conduct over a long time period, the issue is typically whether the jury believes the complainant generally or not at all.' " *Reza,* 339 S.W.3d at 715 (quoting *Smith v. State,* Nos. 02–08–00394–CR, 02–08–00395–CR, 2010 WL 3377797, at \*13 (Tex. App

— Fort Worth Aug. 27, 2010, no pet.) (not designated for publication). In other words, here, if the jury found Mary's testimony about the offenses of indecency by touching her female sexual organ on several occasions was credible as to one of those occasions, then the jury likewise must have believed that her testimony was credible as to all of them. [5] *See Dixon,* 201 S.W.3d at 735; *Reza,* 339 S.W.3d at 716.

[5]     And although the jury was not convinced beyond a reasonable doubt that Hodges committed indecency by touching Mary's breast, a review of the record reveals that the testimony focused on touching Mary's sexual organ, not her breast. Mary testified generally that Hodges "would put his arm around me down my breast and down to my private."

Similarly, regarding the risk of a nonunanimous verdict, Mary's testimony regarding Hodges touching her female sexual organ was general in nature; she testified that it happened on his couch while watching TV and differentiated between incidents only by what she was wearing on different occasions—a big T-shirt and underwear or a T-shirt and jeans. We perceive little to no risk that any juror would have believed that Mary's testimony as to the incidents of Hodges touching her sexual organ was credible as to one incident but not as to another. *See Dixon,* 201 S.W.3d at 735; *Reza,* 339 S.W.3d at 716–17.

Regarding the final purpose of the election requirement— to provide the defendant with adequate notice about which offense to defend against—when the State made its election at trial, the trial court asked defense counsel if the election was "adequate," and defense counsel agreed. Hodges has not indicated that he was adversely affected by not receiving notice of the State's election earlier in the trial. The notice purpose of the election requirement does not weigh in favor of a finding of egregious harm. *See Duffey,* 326 S.W.3d at 634 (holding due process concerns not implicated when defendant received timely notice of State's election upon request and when counsel expressly acknowledged understanding the election and did not indicate that the defense was adversely affected).

Having considered the harm to Hodges in light of the charge, the state of the evidence, the parties' arguments, and the purposes of the election rule, we hold that the trial court's error in failing to instruct the jury regarding the State's election was not so egregious and did not create such harm as to deny Hodges a fair and impartial trial. *See Almanza,* 686 S.W.2d at 171; *see also Cosio,* 353 S.W.3d at 777; *Dixon,* 201 S.W.3d

at 734–36; *Phillips,* 193 S.W.3d at 913–14; *Reza,* 339 S.W.3d at 717. We overrule Hodges's first point.

## IV. ADMISSIBILITY OF OPINION TESTIMONY

**\*7**  In his second point, Hodges argues that the trial court abused its discretion by allowing the State to present, in its case on rebuttal, opinion evidence concerning Mary's good character for truthfulness when her character for truthfulness had not been attacked. Hodges's complaint concerns the following testimony of Jessie, one of the adult leaders at the church retreat:

> Q. What is your opinion of [Mary]'s character for truthfulness?
>
> [DEFENSE COUNSEL]: Objection, Your Honor. That's not—that's not relevant, or she's not capable or competent to answer that question. Not a proper question.
>
> THE COURT: I think there may be a preliminary question in front of that. You may rephrase at this point if you would like to.
>
> Q. (BY [THE STATE] ) In your experiences with [Mary], have you formed an opinion as to her character for truthfulness?
>
> A. Yes.
>
> Q. And is it good or bad?
>
> A. I would say she's been truthful with me.
>
> [DEFENSE COUNSEL]: Objection. That's nonresponsive, Your Honor.
>
> THE COURT: Just listen carefully. Just respond to the question.
>
> THE WITNESS: Sorry.
>
> Q. (BY [THE STATE] ) So it's a good one?
>
> A. Yes.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex.R.App. P. 33.1(a)(1); *Landers v.*

*State,* 402 S.W.3d 252, 254 (Tex.Crim.App.2013); *Sample v. State,* 405 S.W.3d 295, 300 (Tex.App.—Fort Worth 2013, pet. ref'd). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex.R.App. P. 33.1(a)(2); *Pena v. State,* 353 S.W.3d 797, 807 (Tex.Crim.App.2011). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State,* 311 S.W.3d 452, 473 (Tex.Crim.App.2010) (op. on reh'g); *Sample,* 405 S.W.3d at 300.

Here, defense counsel objected to relevancy, "capab[ility] or competen[cy] to answer the question," and nonresponsive, and he obtained a ruling on only his nonresponsive objection. Defense counsel did not preserve his rule 608 argument for appeal. *See* Tex.R.App. P. 33.1(a)(1); *Landers,* 402 S.W.3d at 254; *Sample,* 405 S.W.3d at 300; *see also* Tex.R. Evid. 608(a) (setting forth requirements for admission of character evidence). We overrule Hodges's second point.

## V. ADMISSIBILITY OF HEARSAY TESTIMONY

In his third point, Hodges argues that the trial court abused its discretion by admitting Sally's testimony about certain statements made by Mary in violation of the hearsay rule. Specifically, he complains of Sally's testimony that she once saw Mary "tugging her shirt down to show her cleavage and part of her breasts because that's what Daddy said he liked." After the trial court overruled defense counsel's hearsay and nonresponsive objections, Sally explained that Mary had said she showed her cleavage

> because that's what Daddy liked and that made Daddy happy and turned Daddy on, because he pointed out somebody at Golden Corral that had on a low-cut shirt and was showing off her breasts, and that [Mary] wanted to make Daddy happy and please Daddy. And that's what made Daddy happy and pleased him.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). The "hearsay rule" excludes the admission of hearsay evidence, but the rules of evidence also provide that

many types of hearsay evidence are not excluded by the hearsay rule. *See* Tex.R. Evid. 802, 803, 804.

**\*8** In this case, we need not decide whether the complained-of statements constitute inadmissible hearsay because, even assuming that they were, any error in their admission was harmless. Error in the admission of hearsay evidence is subject to harmless error analysis under rule 44.2(b). Tex.R.App. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999); *Moon v. State,* 44 S.W.3d 589, 594 (Tex.App.—Fort Worth 2001, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State,* 49 S.W.3d 356, 365 (Tex.Crim.App.2001); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App.2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, we have detailed the evidence presented at trial, including Mary's testimony about how Hodges fondled her on many occasions, French kissed her, demonstrated masturbation to her, and watched her change clothes. Hodges vigorously cross-examined Mary and Sally about the allegations and presented evidence in an attempt to contradict Mary's testimony, such as evidence that her door did not have a lock and that her shower had an opaque shower curtain. The jury heard Hodges's testimony denying or explaining the allegations against him, including his explanation of the Golden Corral incident. Hodges said that Mary had asked what "sexy" meant and he had pointed out a woman at Golden Corral who was wearing a low-cut blouse and said that the woman was "trying to be sexy." The State did not mention the Golden Corral incident during closing argument, instead emphasizing Mary's testimony, Hodges's incriminating statements to the detective, and Hodges's explanation of the August 1, 2009 incident. We conclude that, in the context of the entire case against Hodges, any error in the admission of Sally's testimony set forth above did not have a substantial or injurious effect on the jury's verdict and did not affect Hodges's substantial rights. *See King,* 953 S.W.2d at 271. Thus, we disregard the alleged error. *See* Tex.R.App. P. 44.2(b). We overrule Hodges's third point.

## VI. CONCLUSION

Having overruled Hodges's three points, we affirm the trial court's judgment.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 2

FILE COPY



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00073-CR

CHARLES LEE HODGES                                        APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1181223D

------------

## ORDER

------------

We have considered "Appellant's Motion For Rehearing."

It is the opinion of the court that the motion for rehearing should be and is hereby denied and that the opinion and judgment of December 18, 2014, stand unchanged.

The clerk of this court is directed to transmit a copy of this order to the attorneys of record.

FILE COPY

SIGNED February 5, 2015.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

Print this page

# Case # PD-0258-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 04/08/2015 11:17:45 PM |
| Case Number | PD-0258-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | William Wynn |
| Firm Name | Kearney|Wynn, Attorneys at Law |
| Filed By | William Wynn |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Firm credit card |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 7917766 |
| Order # | 004817837-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 04/15/2015 02:18:27 PM | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel in compliance with [Rule 68.4(a)]; it is missing the identity of the trial court judge. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| *Lead Document* | PDR.pdf | [Original] |
|---|---|---|

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Edward L. Wilkinson coaapellatealerts@tarrantcounty.com | Tarrant County District Attorney's Office | EServe | Sent | Yes | Not Opened |
| Lisa McMinn information@spa.texas.gov | Charles W. McDonald | EServe | Sent | Yes | 04/09/2015 08:31:29 AM |