**AFFIRMED; Opinion Filed November 30, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00564-CR

## ARES WENDELL HIATT, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-80604-2018**

## MEMORANDUM OPINION
Before Justices Myers, Nowell, and Evans
Opinion by Justice Myers

A jury convicted appellant Ares Wendell Hiatt of aggravated sexual assault of

a child and the trial court assessed punishment at thirty-three years in prison. In

three issues, appellant contends his right to a unanimous jury verdict was violated;

the trial court abused its discretion in overruling appellant's rule 403 objection; and

the evidence is insufficient to support the conviction. We affirm.

### BACKGROUND

The complainant's mother testified that she started dating appellant around

June or July of 2014, and that she and her two daughters moved in with him in

1

September of 2014. At the time, the complainant was almost three years' old. The complainant and her older sister shared bunk beds, but when her older sister went to live with her biological father, the complainant was left alone in the bedroom. In April of 2016, the complainant's mother took a job at Target and started working overnight, from around 10:00 p.m. to 6:00 a.m. or 10:00 a.m. in the morning.

In October of that year, the complainant told her mother appellant had "licked her pee-pee." That night, the complainant's mother confronted appellant and told him not to come home. When appellant asked why, the complainant's mother told him about the complainant's allegations. Appellant denied the accusations and came home later that night anyway. The complainant's mother spent the night in the complainant's room. A few weeks after the outcry, the complainant also told her mother she thought she might have dreamt the sexual abuse. Asked about this on direct examination, the complainant's mother testified as follows:

Q. [STATE:] At one point, did she say that she thought it might have just been a dream?

A. A few weeks later.

Q. She said that?

A. Yeah.

Q. And when you heard that she thought it might be a dream, what did you take that as?

A. As an excuse.

Q. Did you think, okay, maybe there is a possibility that this didn't happen?

–2–

A. I didn't want to believe it, of course, but I had to believe her.

The complainant's mother arranged for her children to stay with a friend while she worked nights. This went on for a few weeks or perhaps a month, and during that time appellant told the complainant's mother he had allowed the complainant to watch a pornographic "Princess and the Frog" video, but claimed it was a mistake. According to what appellant told the complainant's mother, the complainant had wanted to watch a movie, "The Princess and the Frog," so he searched for it on YouTube. After finding what he thought was the correct video, he handed the tablet to the complainant. Appellant told the complainant's mother that he immediately switched the video to another cartoon when the complainant brought him the tablet and he noticed it "was a sexual movie."

The complainant testified that the "Princess and the Frog" video showed the princess's "friend . . . licking her pee-pee." The complainant said she saw this video only once and that appellant "didn't mean to" show it to her. She also testified that appellant switched to a "Scooby-Doo" cartoon when she showed him what was on the video.

Detective Kristina McClain of the Plano Police Department testified that she searched the internet and found on Pornhub what she believed was the same video appellant had played for the complainant. The video was admitted into evidence and played for the jury.

The complainant's mother testified that about a month after the complainant's

outcry, in November of 2016, she allowed her two children to move back into the house. She said she did this based on a promise from appellant that he would install video cameras to record what was going on in the house. Eventually, however, the complainant's mother discovered the cameras had stopped recording. Then, around January of 2017, the complainant's mother found what "looked like modified sex toys in our bedroom," and they were stored in a bag that she found in a filing cabinet next to appellant's desk. She recognized two of the sex toys as items she and appellant had used together but did not recognize the "finger-wipe things" or the "female arousal serum" that were found in the bag along with the other sex toys. She took the bag to the police. When confronted about the sex toys, appellant claimed he had used the objects on himself.

The complainant recognized some of the items that were found in the bag. A black flashlight, for example, was found in the bag, and the complainant testified appellant would come in her room at night with a black flashlight, take off her pajamas and underpants, and lick her "pee-pee." And during her forensic interview with Eligio Molina of the Collin County Children's Advocacy Center, the complainant used a drawing of a girl to identify her "pee-pee" as the part her body "that she uses to pee." A toy bullet from a Nerf gun that had been cut off at one end was also found in the bag, and the complainant testified that she recognized "the toy bullet dart" because appellant had shown it to her.

The complainant testified that the abuse where appellant licked her "pee-pee"

–4–

happened "[l]ots of times" in her bedroom, and it happened once in her mother's bedroom. It occurred at night when she slept in the bottom bunk of the bunkbeds she shared with her sister, and it stopped after she and her sister switched bunks. The complainant also remembered telling her mother that the abuse was a dream but testified it was not a dream:

> Q. [STATE:] And was it a dream or was it not a dream?
>
> A. It wasn't a dream because I—after he did that, I kind of felt myself, and it wasn't a dream.
>
> Q. It wasn't a dream?
>
> A. Yeah.
>
> Q. And do you remember being awake or seeing that flashlight sometimes when he would do it to you?
>
> A. Yeah. I would peek a little when I was waking, but he didn't see me because my eyes were a little open.
>
> Q. Did you not want him to know that you were awake?
>
> A. Yeah.
>
> Q. And why didn't you want him to know?
>
> A. Because maybe he would get scared.

The complainant could not identify appellant as the person who assaulted her, but she testified that she had not seen appellant in a long time and that she was "a little scared" when she had to look at the table where he was sitting:

> Q. [STATE:] . . . . Tell me, before today, had it been a really long time before you'd seen [appellant]?
>
> A. Yes.

–5–

Q. And did it make you a little scared when I asked you to look over at his table?

A. Yes.

The jury ultimately convicted appellant of aggravated sexual assault of a child, and the trial court assessed punishment at thirty-three years in prison.

## DISCUSSION

### 1. State's Election

In his first issue, appellant argues his "right to a unanimous jury was violated because the trial court admitted additional allegations of sexual abuse" that were not included in the indictment. Thus, according to appellant, "the jurors could have relied on any of the multitude of separate similar instances of sexual abuse that the victim testified to during trial and there would be no manner to determine if they all agreed on the same one instance of sexual abuse beyond a reasonable doubt."

As explained by the Court of Criminal Appeals, the general rule is that "[w]hen one particular act of sexual assault is alleged in the indictment, and more than one incident of that same act of sexual assault is shown by the evidence, the State must elect the act upon which it would rely for conviction." *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017) (internal quotation omitted). "Once the State rests its case in chief, upon a timely request by the defense, the trial court must order the State to make an election." *Id*.

There are four fundamental principles or purposes that are served by an election and its accompanying procedures:

• to protect the accused from the introduction of extraneous offenses;

• to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty;

• to ensure unanimous verdicts; that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred;

• and to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend.

*Id.* (citing *Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006)). The Court of Criminal Appeals has applied these *Phillips* factors in conducting a harm analysis when the State made no election at all. *See Owings*, 541 S.W.3d at 150–51; *Dixon v. State*, 201 S.W.3d 731, 734 (Tex. Crim. App. 2006). Moreover, this Court has held that a trial court's failure to instruct the jury concerning the State's election placed a defendant in the same position as though no election had been made, and we applied the *Phillips* constitutional harm standard. *Duffey v. State*, 326 S.W.3d 627, 631–32 (Tex. App.—Dallas 2009, pet. ref'd). Thus, we will reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See id*. at 632; *see also* TEX. R. APP. P. 44.2(a).

According to the record in this case, after moving for a directed verdict defense counsel requested that the State elect the particular incident on which it would rely. The State announced that "[t]he election we are going to go forward on

is, one time, at night, in [the complainant] and [her sister's] bedroom, in [the complainant's] bed." After the State made that election, appellant moved for a mistrial, arguing:

> The State alleged one event, and, yet, without giving any notice of any kind, they proceeded to bring in evidence about multiple extraneous incidents, in violation of Code of Criminal Procedure 38[.]37, not giving me 30 days['] notice, in violation of 404(b), by giving me a notice that did not include any extraneous offenses.

The trial court denied the motion. Appellant rested without presenting any evidence.

> The trial court charged the jury as follows:

> You must not find the defendant guilty of Aggravated Sexual Assault of a Child unless you all agree that the State has proved that the defendant committed that offense one time at night in [the complainant] and [her sister's] bedroom in [the complainant's] bed. Any evidence that the defendant may have committed the alleged offense at any other place is not sufficient for you to find him guilty of Aggravated Sexual Assault of a Child.

> You are instructed that any evidence that the defendant may have committed the alleged offense of Aggravated Sexual Assault of a Child at a place other than one time at night in [the complainant] and [her sister's] bedroom in [the complainant's] bed cannot be considered for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed. Even then, you may only consider the same in determining the intent, identity, preparation, plan, or opportunity of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

> Defense objected to the charge and requested the State to be more specific about its election and give an age or a time when the offense occurred:

> The State has elected one time, in the bedroom at night, in [the complainant] and [her sister's] bedroom, in [the complainant's] bed. However, in the evidence that we have heard, [the complainant] has

–8–

said, first of all, in the forensic video, it happened when she was two. And then later—well, on direct evidence, that she testified to, she said it happened when she was three and four years old. So I would like the State to pick out when this happened, at least by an age, because if we're talking about one incident and you can differentiate an incident, you need to do so. So we request that they designate, at least, an age.

Defense counsel also argued:

What I would like is this: The description of this one incident at age five came after all of what she claims were these other incidents at ages two, three and four. Therefore, it couldn't have shown anything—it doesn't bear on intent, opportunity, motive, or any of the other ideas from which 404(b) comes. Therefore, all the testimony about that record—about that one incident, since it does not satisfy the reasons under 404(b) for having admitted it, it should be stricken from the record and the jury instructed not to consider that one incident.

The trial court overruled the objection. During its closing argument, the State directed the jury to the portion of the jury charge that set out the State's election, telling the jury:

First of all, you will see on Page 3, the top paragraph talks about the State electing to go forward on one particular incident. In this case, we have elected to go forward on one time, at night, in [the complainant] and [her sister's] bedroom, in [the complainant's] bed. That is a legal requirement in cases like this of chronic abuse. The State is required to elect to go forward on one particular incident. However, as we all know, we have heard testimony about several incidents, with the same manner and means but several incidents of abuse. The paragraph right below that is going to tell you how you can consider those other incidents and helping you make your decision in this case.

Appellant argues the instruction in the court's charge was not specific enough and, as a result, it was as though there was no election at all. The State responds that the alleged lack of specificity in the jury charge did not contribute to appellant's conviction, and with this we agree. Even if we assume—without deciding the

–9–

issue—that the instruction in the court's charge was inadequate, the record establishes beyond a reasonable doubt that the alleged error did not contribute to appellant's conviction.

Applying the *Phillips* factors, *see Duffey*, 326 S.W.3d at 630, we turn first to appellant's need to be protected from the admission of extraneous-offense evidence. This first purpose may be easily dispensed with in this case because appellant was not entitled to protection from the admission of evidence of extraneous sexual offenses committed by him against the complainant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37; *Dixon*, 201 S.W.3d at 734. Article 38.37 permits the admission of evidence of these offenses to show the previous and subsequent relationship between appellant and the complainant. TEX. CODE CRIM. PROC. ANN. art. 38.37; *Dixon*, 201 S.W.3d at 734–35.

Regarding the second purpose, we conclude there is no risk the jury found appellant guilty of an offense that was not proven to its satisfaction beyond a reasonable doubt. *See Dixon*, 201 S.W.3d at 734–35. The complainant testified appellant would enter her room with a flashlight, remove her pajama pants and underpants, and lick her "pee-pee." This happened "[l]ots of times" during the night in her bedroom; it happened once in her mother's bedroom. Similarly, in *Dixon* the Court of Criminal Appeals concluded the record established beyond a reasonable doubt that the error in failing to require the State to elect did not contribute to appellant's conviction or punishment where the victim testified the offenses

–10–

occurred 99 times in the nighttime and once in the daytime. *See id.* And just as in *Dixon*, the "multiple offenses" here were all recounted by the same source—the child complainant. *See id.* at 735. Thus, as the *Dixon* court concluded, "[t]his case is not concerned with evidence of different activities from different sources that a jury might perceive to 'add up' to the defendant being guilty even though no individual offense was proven beyond a reasonable doubt." *Id.* Additionally, "the child complainant did not testify about a number of varied incidents with differing details that might have incrementally added to the idea that the defendant must have done something to provoke the plethora of stories about his activities." *Id.* Instead, the complainant described one sequence of events and testified that this sequence happened "[l]ots of times" during the night in her bedroom and only once in her mother's bedroom. *See id.* "Whether the sequence of events was alleged to have occurred one, ten, fifty, or one hundred times does not by itself impact the believability of the child's story." *Id.*

We next determine whether, absent a proper instruction, we can be sure the jury verdict was unanimously directed at the single offense elected. The only distinguishing detail regarding the occasions when appellant licked the complainant's "pee-pee" is that it occurred once in her mother's bedroom—the other incidents took place in her bedroom. Accordingly, we perceive no risk the jury could have reached a non-unanimous verdict in this case. Based on the record in this case, anyone who believed the complainant's allegations would have concluded the

–11–

offense occurred in her bedroom. *See id.* at 735 ("The nighttime scenario being typical (ninety-nine out of one hundred), it is obvious from this record that anyone who believed the complainant's allegations in any respect would believe that [the] sexual assaults occurred at night.").

As for the question of adequate notice, appellant's defense was the same for each incident of sexual abuse—a categorical denial. He did not have different explanations for the different incidents, nor did he offer an alibi. And as we have already discussed, the only distinction between the incidents of sexual abuse is that one occurred in her mother's bedroom; the others happened in her bedroom. Therefore, appellant's defense was not inhibited by any error that may have occurred and he was not deprived of proper notice or an opportunity to defend himself. *See Owings*, 541 S.W.3d at 153; *Dixon*, 201 S.W.3d at 736.

Based on our review of the record, we conclude that, even if we assume error in failing to adequately instruct the jury concerning the elected offense in this case, the record establishes beyond a reasonable doubt that the error did not contribute to appellant's conviction. We overrule appellant's first issue.

## 2. Admissibility of Evidence

In his second issue, appellant contends the trial court abused its discretion in overruling appellant's rule 403 objection "to the admission of sex toys and a pornographic cartoon parody video during the guilt/innocence phase of the trial,"

and that "[t]his evidence was more prejudicial than probative and unfairly prejudiced the jury against Appellant."

To preserve error for appeal, a party must make a timely objection that states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). The party must object each time inadmissible evidence is offered or obtain a running objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Moreover, the argument on appeal must comport with the objection made at trial. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

Appellant argues he objected to the admission of the sex toys that were found in the bag discovered by the complainant's mother (and that she handed over to the police) under rule 403, and that the trial court overruled the objection. He fails, however, to direct this Court to where in the record this argument was made and ruled on by the trial court. Our review of the record shows his argument was not preserved.

In a hearing held outside the jury's presence, the parties discussed the redaction of a video of appellant's interview with police. During the hearing, appellant requested that any mention of the sex toys be redacted because they were not relevant and were inadmissible under rules 403 and 404(b). But appellant's argument was made as part of a motion to redact and concerned what should be

redacted from the video—it was not expanded to include the admission of evidence regarding the sex toys themselves. And even if this could be construed as a broader objection to the admission of *all* evidence regarding the sex toys, appellant failed to object that the evidence was inadmissible under rule 403 when that evidence (State's exhibits 3 through 22) was offered or when it was discussed in testimony, nor did he obtain a running objection. Appellant instead objected to the admission of the bag that contained the sex toys, and photographs of what was in the bag, based on a failure to authenticate and relevance, and he made no rule 403 objection when Detective Kristina McClain of the Plano Police Department and the complainant's mother testified about the bag's contents. A contention based on rule 403 is not preserved by a relevance objection. *See, e.g., Sony v. State*, 307 S.W.3d 348, 355–56 (Tex. App.—San Antonio 2009, no pet.) (relevance objection to photographs at trial did not preserve appellate argument based on rule 403); *Phifer v. State*, No. 05-14-01411-CR, 2016 WL 772737, at *4 (Tex. App.—Dallas Feb. 29, 2016, no pet.) (mem. op., not designated for publication) ("Neither a contention based on rule 404(b) nor an argument under rule 403 was preserved by [appellant's] relevance objection."); *Gamble v. State*, No. 02-07-174-CR, 2009 WL 806879, at *7 (Tex. App.—Fort Worth March 27, 2009, pet. ref'd) (mem. op., not designated for publication) (argument that admission of evidence violated rules 403, 404, and 405 not preserved because appellant did not so object at trial). We conclude appellant has failed to preserve his argument that the sex toys were inadmissible under rule

403 for appellant review.

We reach a similar conclusion regarding appellant's argument that the probative value of the pornographic "Princess and the Frog" video was outweighed by the danger of unfair prejudice because (according to appellant's argument) both appellant and the complainant agreed it was a mistake to have her view the cartoon and it was promptly "shut off" after it was discovered to be pornographic.

Appellant claims he objected to the admission of the "Princess and the Frog" video under rule 403, and that the trial court overruled this objection, but we again note that he has not directed us to any place in the record where such an argument was made and ruled on by the trial court. Indeed, our review of the record shows his argument was not preserved. At the time the actual video was offered into evidence, appellant's only objection was that it was not properly authenticated. Hence, the argument on appeal does not comport with the trial objection, and appellant has not preserved his complaint for appellate review. We further note that appellant made no rule 403 objection when the complainant and her mother testified about the video. Appellant has, consequently, failed to preserve any argument that the evidence was inadmissible under rule 403. We overrule appellant's second issue.

### 3. Sufficiency of the Evidence

In his third issue, appellant argues the child complainant's testimony was not credible because "she was unable to detail whether there was one offense or many, nor was she able to identify the appellant as her abuser during the trial"; therefore,

–15–

"the trial court abused its discretion by failing to order an instructed verdict."

To begin with, any error in the denial of a motion for an instructed verdict is treated as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Segovia v. State*, 543 S.W.3d 497, 502 n. 2 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Thus, in determining whether the evidence is sufficient to support a conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a factfinder could have found the essential elements of the charged offense were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). The factfinder must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (citing *Jackson*, 443 U.S. at 319). We presume the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also defer to the factfinder's evaluation of the credibility and weight of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The standard is the same for both direct and circumstantial evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

A child victim's testimony alone is sufficient to support a conviction for

aggravated sexual assault of a child. *See, e.g., Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Also, a child victim's outcry statement alone can sustain the conviction. *Tear*, 74 S.W.3d at 560. There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *See Newby v. State*, 252 S.W.3d 431, 437 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Robinson v. State*, No. 05-09-01329-CR, 2011 WL 168736, at *4 (Tex. App.—Dallas Jan. 20, 2011, no pet.) (mem. op., not designated for publication).

As charged in the indictment, appellant was accused of intentionally and knowingly causing the female sexual organ of the complainant, then a child younger than six years of age, to contact appellant's mouth. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A). Trial testimony showed that the complainant said appellant would come into her room at night with a black flashlight, remove her pajamas and underpants, and lick her "pee-pee." The complainant testified this happened "[l]ots of times" during the night in her bedroom; it happened once in her mother's bedroom. This testimony alone is sufficient to support appellant's conviction. *See, e.g., Revels*, 334 S.W.3d at 52; *Tear*, 74 S.W.3d at 560.

Appellant argues the evidence was insufficient because the complainant responded "I don't know" to several questions and was unable to identify appellant in court as her abuser. But the record also shows that the complainant testified appellant came into her room at night, removed her clothing, and licked her "pee-

–17–

pee." Additionally, although the complainant testified that she did not see appellant in the courtroom, she testified that she had not seen appellant in a long time and was scared when she had to look at the table where he was sitting. The jury was the sole judge of the weight and credibility of the evidence and it was free to accept or reject the evidence presented by either side. *See, e.g., Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Appellant also contends the evidence was insufficient because the forensic interviewer testified that, as an expert, she was able to judge the complainant's body language and communication. Appellant argues this was a "dubious claim" that is not supported by the record. Again, however, the jury was free to accept or reject any and all evidence presented by either side. *See id.* Accordingly, we conclude the evidence is sufficient to support the conviction, and we overrule appellant's third issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190564F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ARES WENDELL HIATT,
Appellant

No. 05-19-00564-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-80604-2018.
Opinion delivered by Justice Myers. Justices Nowell and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of November, 2020.